**REESE RICHMAN LLP**
Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Christopher B. Sanchez
*csanchez@caffertyclobes.com*
30 North LaSalle Street
Suite 3200
Chicago, Illinois  60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Counsel for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GARY W. SGOUROS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSUNION CORP.; TRANS UNION LLC; and TRANSUNION INTERACTIVE, INC.,<br><br>Defendants. | Case No. 14-cv-1850<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gary W. Sgouros ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, alleges the following, based upon his personal knowledge and the investigation of his counsel. Plaintiff believes substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### SUSBSTANTIVE ALLEGATIONS

1. This is a proposed class action against TransUnion Corp.; Trans Union LLC; and TransUnion Interactive, Inc. (collectively, "TransUnion" or "Defendants") for:

    a. Charging consumers for credit scores (the "TransUnion Consumer Credit Scores") that TransUnion did not derive from a credit scoring model that is widely distributes to lenders but instead is based on a vastly inferior and inaccurate model that is essentially useless to consumers; and

    b. misleading consumers concerning the TransUnion Consumer Credit Scores by failing to prominently and clearly inform the consumers that Defendants generated the TransUnion Consumer Credit Scores using a significantly different (and greatly inferior) credit scoring system than that used to give credit scores to lenders.

2. TransUnion does not generate the TransUnion Consumer Credit Scores using the credit scoring system lenders use in over 90% of United States lending decisions (*i.e.*, the FICO system, *see infra* at 13–15). Instead, TransUnion generates the TransUnion Consumer Credit Scores using a credit scoring models that is not widely distribute to lenders, and, as a result, is vastly inferior and of little value to consumers.

3. As a result of the significant difference between the TransUnion Consumer Credit Scores sold TransUnion sells to consumers, and the credit scores provided to the vast majority of lenders, the TransUnion Consumer Credit Scores do not meaningfully assist consumers in understanding how lenders will assess their creditworthiness or how lenders will make predictions about the consumers' future credit behavior, which is the very reason that Plaintiff and other consumers bought the TransUnion Consumer Credit Score in the first place.

4. During the period from five years prior to the filing of this Complaint to the present, Defendants marketed the TransUnion Consumer Credit Scores in a manner that misled consumers, by concealing from the consumers that TransUnion generated the TransUnion Consumer Credit Scores using a credit scoring system that substantially differs (and is vastly inferior) from the credit scoring system United States lenders routinely use in connection with lending decisions.

5. In connection with Defendants' sale of the TransUnion Consumer Credit Scores to consumers, Defendants failed to prominently and clearly disclose that they generated the TransUnion Consumer Credit Scores using a substantially different (and greatly inferior) credit scoring system than United States lenders routinely use in connection with lending decisions.

## THE PARTIES

### Plaintiff Gary W. Sgouros

6. Plaintiff Gary W. Sgouros is a resident of Eureka, Missouri, and he has no intention of changing his residence.

7. On or about June 10, 2013, in exchange for $39.90 that Mr. Sgouros paid Trans-Union, TransUnion provided Mr. Sgouros a TransUnion Consumer Credit Score.

8. On or about June 10, 2013, Mr. Sgouros learned from a lender that the information that Trans-Union had provided to Mr. Sgouros was inaccurate, in that the credit score for Mr. Sgouros provide to the lender (a car dealership) was more than 100 points lower than the report that Trans-Union sold to Mr. Sgouros.

9. Mr. Sgouros called TransUnion and complained that the TransUnion Consumer Consumer Credit Scores he purchased did not align with the TransUnion credit scores his lenders used.

10. Defendants injured Mr. Sgouros in violation of the FCRA by providing him TransUnion Consumer Credit Scores that were not "derived from a credit scoring model that is widely distributed to [lenders] by [TransUnion] in connection with residential real property loans" and that did not "assist[] [Mr. Sgouros] in understanding the credit scoring assessment of [his] credit behavior . . . and predictions about [his] future credit behavior . . . ."[1]

11. Defendants also injured Mr. Sgouros in violation of the FCRA by providing him TransUnion Consumer Credit Scores that were inaccurate because they were materially misleading.[2] Even if the TransUnion Consumer Credit Scores technically *were* "credit scores"

---

[1] 15 U.S.C. § 1681g(f)(7)(A).

[2] 15 U.S.C. § 1681e(b).

under the FCRA,[3] the TransUnion Consumer Credit Scores were materially misleading because they failed to prominently and clearly disclose to Mr. Sgouros that they were not generated using the same credit scoring system routinely used by U.S. lenders when making lending decisions.

12. Furthermore, Defendants injured Mr. Sgouros in violation of state consumer protection laws by concealing material characteristics of the TransUnion Consumer Credit Scores from him in connection with TransUnion's marketing and sale of the TransUnion Consumer Credit Scores to Mr. Sgouros.

13. Like most consumers, Mr. Sgouros believed the credit scoring system used to generate the TransUnion Consumer Credit Scores he purchased was the same as the credit scoring system that lenders routinely use in connection with evaluating creditworthiness. In truth, it was not.

14. Unfortunately for Mr. Sgouros, however, the credit score that TransUnion sold to him is not based on an accurate or otherwise standard credit scoring system used in the vast majority of lending decisions in the United States. Accordingly, the credit score sold to Mr. Sgouros by TransUnion was essentially worthless to Mr. Sgouros.

15. Had Mr. Sgouros known about the significant differences between the TransUnion Consumer Credit Scores he purchased and the credit score lenders routinely use, he would not have paid money to TransUnion for the TransUnion Consumer Credit Scores.

16. Moreover, Mr. Sgouros relied upon the inaccurate TransUnion Consumer Credit Scores he purchased in deciding to seek extensions of credit, which his potential lenders ultimately denied him because the credit scores his potential lenders used were much lower than the inaccurate TransUnion Credit Score Mr. Sgouros purchased.

---

[3] 15 U.S.C. § 1681g(f)(2)(A).

## PARTIES

### Defendant TransUnion Corp.

17. Defendant TransUnion Corp. incorporated in the State of Delaware on December 2, 2004.

18. TransUnion Corp.'s corporate headquarters are located at 555 West Adams Street, Chicago, Illinois 60661.

### Defendant Trans Union LLC

19. Defendant Trans Union LLC is a limited liability corporation organized under the laws of the State of Delaware.

20. Trans Union LLC's headquarters are located at 555 West Adams Street, Chicago, Illinois 60661.

### Defendant TransUnion Interactive, Inc.

21. Defendant TransUnion Interactive, Inc., is a corporation organized under the laws of the State of Delaware on April 26, 2000.

22. TransUnion Interactive, Inc. has an office at 100 Cross Street, Suite 202, San Luis Obispo, California 93401.

23. TransUnion Interactive, Inc. is the consumer subsidiary of TransUnion.

## **JURISDICTION AND VENUE**

24. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: TransUnion's headquarters are in Illinois. As a result, TransUnion has continuous and systematic ties with Illinois such that TransUnion is "essentially at home" here, meaning the Court has general *in personam* jurisdiction over TransUnion.

25. This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that there are at least 100 members in the proposed plaintiff class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to Plaintiff's claims, including Defendants' dissemination of credit scores that violate the FCRA and that mislead consumers, such as Mr. Sgouros, occurred within this District.

## CLASS ALLEGATIONS

27. Plaintiff brings his First Cause of Action, *see infra*, to redress alternative violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* One alternative is based on willful violations of the FCRA. The other alternative is based on negligent violations of the FCRA. It shall be up to the factfinder to determine whether Defendants' violations of the FCRA are willful or negligent, based upon the facts presented at trial. Collectively, this Complaint refers to the classes identified below in this paragraph as the "FCRA Class" or the "FCRA Classes."

    a. Willful Violations. Plaintiff brings his First Cause of Action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States who at any time during the FCRA Class Period of March 14, 2012 to present were the subject of a consumer report TransUnion issued that contained a TransUnion Consumer Credit Score and who either:
>
> (i) as a result of TransUnion's willful violation of 15 U.S.C. §§ 1681g(f)(7)(A) and 1681e(b), elects, after proper notice, to accept statutory and punitive damages as authorized under 15 U.S.C. § 1681n ("FCRA Willful Violations Class A"), or
>
> (ii) as a result of TransUnion's willful violation of 15 U.S.C. §§ 1681g(f)(7)(A) and 1681e(b), elects, after proper notice, to prove at a separate proceeding, actual damages and punitive damages ("FCRA Willful Violations Class B").

    b. Negligent Violations. In the alternative, Plaintiff brings his First Cause of Action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States who at any time during the FCRA Class Period were the subject of a consumer report TransUnion issued that contained a TransUnion Consumer Credit Score and who, as a result of TransUnion's negligent violation of 15 U.S.C. §§ 1681g(f)(7)(A) and 1681e(b) ("FCRA Negligent Violations Class").

28. Excluded from the FCRA Classes are officers and directors of Defendants; members of the immediate families of the officers and directors of Defendants; their legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

29. In addition, Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class and sub-class (the "Consumer Protection Class"):

> All persons in the United States who purchased TransUnion Consumer Credit Scores from Defendants during the Consumer class period of March 14, 2011 to present.

30. Plaintiff also brings this action on behalf of the following subclass:

> All persons in the state of Missouri who purchased TransUnion Consumer Credit Scores from Defendants during the class period March 14, 2009 to present.

31. Excluded from the Consumer Protection Class are officers and directors of Defendants; members of the immediate families of the officers and directors of Defendants; their legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

32. Collectively, this Complaint refers to the FCRA Classes and the Consumer Protection Class as the "Class" or "Classes."

**Numerosity**

33. At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and Defendants' widespread sale of TransUnion Consumer Credit Scores to consumers, Plaintiff believes that members of the Classes are so numerous that joinder of them is impracticable.

**Commonality**

34. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the Class members that predominate over questions that may affect individual Class members include:

    a. whether the TransUnion Consumer Credit Scores Defendants sold the Class members violated § 1681g(f)(7)(A) of the FCRA;

    b. whether the TransUnion Consumer Credit Scores Defendants sold the Class members violated § 1681e(b) of the FCRA;

    c. whether Defendants concealed material information concerning the TransUnion Consumer Credit Scores they sold consumers; and

    d. whether Defendants injured Plaintiff and the Class members as a result of their deceptive and misleading advertising and business practices.

**Typicality**

35. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendants' TransUnion Consumer Credit Scores in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

**Adequacy**

36. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class members.

**Injunctive Relief**

37. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

**Monetary Relief**

38. The prerequisites to maintaining a class action for monetary relief pursuant to Federal Rule of Civil Procedure 23(b)(3) are met, as the questions of law or fact common to Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent ruling and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class even though certain members of the Class are not parties to such actions.

39. Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*)
(On behalf of the FCRA Classes)

40. Plaintiff realleges and incorporates the above paragraphs of this Complaint as if set forth herein.

41. Plaintiff brings this claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, on behalf of the FCRA Classes.

42. Plaintiff's First Cause of Action is based on the content of the TransUnion Consumer Credit Score reports themselves, not the content of www.transunion.com insofar as it is not included within the TransUnion Consumer Credit Score reports.

43. TransUnion's businesses operate as a "consumer reporting agency" as the FCRA defines that term in 15 U.S.C. § 1681a(f).

44. When a consumer reporting agency communicates a credit score to consumers or others, the credit score is a "consumer report" as the FCRA defines that term in 15 U.S.C. § 1681a(d)(1), since the credit score is a "written . . . communication of . . . information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit . . . to be used primarily for personal, family, or household purposes . . . ."

45. The TransUnion Consumer Credit Scores are "credit scores" as the FCRA defines that term in 15 U.S.C. § 1681g(f)(2)(A).

**First Violation**

46. Under 15 U.S.C. § 1681g(f)(7)(A), a credit reporting agency that provides a credit score to a consumer must:

> supply the consumer with a credit score that is derived from a credit scoring model that is widely distributed to users by that consumer reporting agency in connection with residential real property loans or with a credit score that assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer[.]

47. The TransUnion Consumer Credit Scores are not "derived from a credit scoring model that is widely distributed to [lenders] by [TransUnion] in connection with residential real property loans".

48. Nor are the TransUnion Consumer Credit Scores credit scores that "assist[] the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer" because the TransUnion Consumer Credit Scores do not correspond to the credit scores lenders use in over 90% of United States lending decisions.

49. Thus, when TransUnion provided the TransUnion Consumer Credit Scores to Plaintiff and the FCRA Class members, TransUnion willfully or negligently failed to comply with § 1681g(f)(7)(A) of the FCRA.

**Second Violation**

50. Under 15 U.S.C. § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Class Action Complaint, *Sgouros et al. v. TransUnion Corp. et al.*

51. Consumer reports are inaccurate for purposes of § 1681e(b) not only when they are facially false, but also when they are technically accurate yet nonetheless misleading.

52. With respect to Plaintiff and FCRA Class members, TransUnion has willfully or negligently violated § 1681e(b) of the FCRA by providing inaccurate, misleading TransUnion Consumer Credit Score reports, since the scores did not prominently and clearly disclose that they were not generated using the credit scoring system lenders routinely use, as described herein.

53. Further, TransUnion did not follow "reasonable procedures to assure maximum possible accuracy" of the TransUnion Consumer Credit Score reports because TransUnion failed to prominently and clearly disclose that the TransUnion Consumer Credit Scores were not generated using the same credit scoring system lenders routinely use.[4]

54. Thus, when TransUnion provided the TransUnion Consumer Credit Scores to Plaintiff and the FCRA Class members, TransUnion failed to comply with § 1681e(b) of the FCRA.

55. TransUnion's liability to Plaintiff and the FCRA Class members arose from the same unlawful policies, practices, or procedures.

56. TransUnion's violations of §§ 1681g(f)(7)(A) and 1681e(b) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

---

[4] By failing to prominently and clearly make such disclosure, TransUnion failed to fulfill the purpose of the notification requirement in 15 U.S.C. § 1681g(f)(1) ("Upon the request of a consumer for a credit score, a consumer reporting agency shall supply to the consumer a statement indicating that the information and credit scoring model may be different than the credit score that may be used by the lender[.]").

57. In the alternative, TransUnion's violations of §§ 1681g(f)(7)(A) and 1681e(b) were negligent in that it had affirmative statutory duties to provide credit scores that complied with § 1681g(f)(7)(A) and to employ reasonable procedures to ensure maximum possible accuracy of information in the consumer reports in question, but failed to comply with either statutory duty.

58. If TransUnion willfully violated §§ 1681g(f)(7)(A) and 1681e(b), Plaintiff and the Class are entitled to damages, as specified in § 1681n.

59. In the alternative, if TransUnion negligently violated §§ 1681g(f)(7)(A) and 1681e(b), Plaintiff and the Class are entitled to damages at a separate proceeding, as specified in § 1681o.

60. Therefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)**
**(815 ILCS 505/1 *et seq.*))**

61. Plaintiff realleges and incorporates the above paragraphs of this Complaint as if set forth herein.

62. At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, Section 2, of which provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815ILCS 505/1 (footnotes omitted).

63. Plaintiff and the Class have standing to assert this claim because they are consumers within the meaning of the Act and Defendants' practices were addressed to the market generally and otherwise implicate consumer protection concerns. At all relevant times, Defendants conducted "trade and commerce" within the meaning of 815 ILCS 505/1(f).

64. Defendants have committed unfair and/or deceptive acts by engaging in the acts and practices alleged herein.

65. Defendants intended that Plaintiff and the Class rely on the unfair and deceptive acts and omissions alleged herein.

66. Defendants' actions, which were willful and wanton, constitute intentional violations of the Consumer Fraud Act.

67. Defendants' unlawful, unfair and/or deceptive practices described herein are continuing in nature and are widespread practices. Plaintiff and the Class have been damaged as a proximate result of Defendants' course of conduct and violations of the Consumer Fraud Act. In particular, Plaintiff and Class members bought the TransUnion Consumer Credit Scores, expecting that they were the same credit scores used by lenders (when, in fact, they were not). As a result, the credit scores were essentially worthless to consumers.

## THIRD CAUSE OF ACTION

**(Violation of Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*)**
**(On behalf of the Consumer Fraud Class)**

68. Plaintiff realleges and incorporates the above paragraphs of this Complaint as if set forth herein.

69. Plaintiff brings this claim under the Missouri Merchandizing Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, on behalf of the Consumer Fraud Class.

70. At all relevant times, section 407.020 of the MMPA was in full force and effect, and provided, in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

71. "Trade or commerce" is defined in Mo. Rev. Stat. § 407.010 as:

> The advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms "trade" and "commerce" include any trade of commerce directly or indirectly affecting the people of this state.

72. As set forth herein, Defendants' acts, practices, and conduct violate section 407.020 in that, among other things, Defendants have used and/or continue to use deception, misrepresentation, unfair practices, concealment, suppression, and/or omission of material facts in connection with the advertising, marketing, offering, and sales of TransUnion Consumer Credit Scores.

73. Plaintiff and members of the Class seek actual damages; a declaration that Defendants' methods, acts, and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq*; an injunction prohibiting Defendants from continuing to engage in such unlawful methods, acts, and practices; restitution, rescission, pre- and post-judgment interest, punitive damages, attorney's fees and costs, and any other relief that the Court deems necessary or proper.

74. Therefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Classes as follows:

A. An Order certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3);

B. An Order declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C. An Order declaring that Defendants have committed the violations of law alleged herein;

D. An Order providing for any and all injunctive relief the Court deems appropriate;

E. An Order awarding statutory damages in the maximum amount provided by law;

F. An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury, with respect to the common law claims alleged;

G. An Order awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

H. An Order establishing Defendants as constructive trustees of the profits that served to unjustly enrich Defendants, together with interest during the period in which Defendants retained such funds;

I. An Order providing for restitution and disgorgement to Plaintiff and the Class members;

J. An Order awarding interest at the maximum allowable legal rate on the forgoing sums;

K. An Order awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees; and

L. Such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  March 14, 2014                                  Respectfully submitted,

**REESE RICHMAN LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CAFFERTY  CLOBES  MERIWETHER & SPRENGEL LLP**
Christopher B. Sanchez
*csanchez@caffertyclobes.com*
30 North LaSalle Street
Suite 3200
Chicago, Illinois  60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Counsel for Plaintiff
and the Proposed Class*