## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GARY W. SGOUROS, on behalf of himself
and all others similar situated

   Plaintiff,

   v.

TRANSUNION CORP.; TRANS UNION LLC;
and TRANSUNION INTERACTIVE, INC.

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No. 14-cv-1850

Judge James B. Zagel

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Michael O'Neil
David Z. Smith
Timothy R. Carraher
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606

*Counsel for Defendants TransUnion Corp.,
Trans Union LLC and TransUnion
Interactive, Inc.*

# I.    **INTRODUCTION**

All of plaintiff Gary Sgouros's claims arise from his purchase of a credit score over the internet from defendant TransUnion Interactive, Inc. ("TransUnion Interactive"). Before Plaintiff could purchase that product, he affirmatively accepted the terms of the Service Agreement, which include a mandatory arbitration provision. The Service Agreement's arbitration provision is broad, requiring that all claims relating to the purchase of the product be arbitrated on an individual basis.

The broad arbitration provision expressly requires Plaintiff to arbitrate his individual claims against TransUnion Interactive and its parent (and named co-defendant in this action), Trans Union LLC. Moreover, the arbitration provision contains a class-action-waiver that requires Plaintiff to pursue his claims on an individual basis, not on behalf of a putative class. Additionally, Plaintiff should be compelled to arbitrate his claims against the third named defendant, TransUnion Corporation ("TU Corp"), a non-signatory to the Service Agreement, because his Complaint raises allegations of substantially interdependent and concerted misconduct by TU Corp. and the signatories to the Service Agreement. That is, Plaintiff alleges throughout his Complaint that TU Corp. acted collectively and inseparable with TransUnion Interactive and Trans Union LLC in allegedly violating the Fair Credit Reporting Act, the Illinois Consumer Fraud and Deceptive Business Trade Practices Act, and the Missouri Merchandising Practices Act. As the Service Agreement specifically reserves for the court all issues relating to the scope, validity, and enforceability of the arbitration provision, the court should compel Plaintiff, pursuant to the Federal Arbitration Act, to arbitrate all of his claims on an individual, not class-wide, basis.

Defendants previously filed a Motion to Dismiss [D.E. #14],[1] and the Court set September 30, 2014 as the date for ruling on that Motion. [D.E. #17.] Defendants are filing their motion to compel arbitration at this time because the Service Agreement contains a deadline for demanding arbitration. Defendants therefore, while reserving their right to compel arbitration, respectfully request that the Court defer ruling on the merits of the motion to compel arbitration until after it rules on the motion to dismiss.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Internet Purchase of Transunion Interactive's Credit Score Product is Governed by the Service Agreement.

TransUnion Interactive provides internet-based products and services to consumers through its websites. (*See* Declaration of Kate Anderson (attached hereto as Exhibit 1), ¶ 4.) These websites are internet portals through which individuals can purchase credit reports, credit scores, credit monitoring, and other products and services relating to that individual's credit history. (*Id.*) Before purchasing any product from TransUnion Interactive, all consumers must first agree to the terms and conditions of the Service Agreement displayed on the website. (*Id.* ¶¶ 6-7; *see id.* at Ex. A (the "Service Agreement").) Consumers indicate their acceptance of the Service Agreement by clicking on a button immediately below the Service Agreement's text. If a consumer does not accept the Service Agreement, the transaction cannot be completed. (*Id.* ¶ 7.) On June 10, 2013, Plaintiff purchased a bundle of products described as 3-in-1 Credit Reports, Credit Scores & Debt Analysis through TransUnion Interactive's website. (*Id.* ¶ 5.)

---

[1]     The filing of that motion does not waive defendant's right to compel arbitration. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Rec. Prods., Inc.*, 660 F.3d 988, 995-96 (7th Cir. 2011) ("a party does not waive its right to arbitrate by filing a motion to dismiss") (*citing Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 807 (7th Cir. 2011) and *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)); *Jezek v. Carecredit, LLC*, No. 10 C 7360, 2011 WL 2837492, at *5 (N.D. Ill. Jul. 18, 2011).

Accordingly, Plaintiff at the time of his purchase electronically accepted the terms of the Service Agreement. (*Id.* ¶ 8.)

The Service Agreement contains a broad arbitration agreement:

> [A]ny dispute, claim or controversy ("Claim") between you and TransUnion Interactive or its parent, TransUnion, our agents, contractors, employees, officers or assignees, arising out of or relating in any way to this Agreement, your purchase and use of a TransUnion Interactive product or use of this Site, including, without limitation, tort and contract claims, claims based on any federal, state or local statute, law or regulation and the issue of arbitrability must be resolved exclusively by binding arbitration, except for the validity, scope or enforceability of this Arbitration Agreement.

(Service Agreement at 8 (emphasis in original omitted) (hereinafter the "Arbitration Provision").) The Service Agreement also provides that a consumer has a "RIGHT TO REJECT ARBITRATION," which can be exercised by mailing an opt-out request anytime within sixty days of purchase. (*Id.* (emphasis and capitalization in the original).) Plaintiff here did not exercise his right to reject arbitration. (Anderson Decl. ¶ 8.)

The Service Agreement's Arbitration Provision also requires a consumer to arbitrate his or her claim on an individual basis, as it prohibits a consumer from seeking relief on behalf of a class or otherwise participating in a class action suit:

> YOU UNDERSTAND AND AGREE THAT NO CLAIM, DISPUTE OR CONTROVERSY MAY BE CONSOLIDATED WITH A DISPUTE OF ANY OTHER PERSON IN ARBITRATION, OR RESOLVED ON A CLASS-WIDE BASIS BY A CLASS ACTION OR OTHER PROCEEDING AND YOU HEREBY WAIVE YOUR RIGHT TO COMMENCE OR PARTICIPATE IN ANY SUCH COLLECTIVE OR REPRESENTATIVE PROCEEDING.

(*Id.* at 9 (capitalization in original).) The Arbitration Provision requires that individual arbitration proceed before a single arbitrator under the Rules of the American Arbitration Association, including the "AAA's Supplementary Procedures for Consumer-Related Disputes." (*Id.*) The arbitration venue shall be "within the federal judicial district that includes the most

recent U.S. Mail address that [TransUnion Interactive] ha[s] on file for [the purchaser] at the time the claim is filed or at any other mutually acceptable location." (*Id.* at 10.)

## B. In Breach of the Arbitration Provision, Plaintiff Files This Putative Class Action in This Court.

On March 14, 2014, notwithstanding the clear requirements of the Arbitration Provision, Plaintiff initiated the instant putative class-action suit. Plaintiff alleges in his Complaint that the Defendants, in selling and marketing the credit report product at issue, violated the Fair Credit Reporting Act ("FCRA"), the Illinois Consumer Fraud and Deceptive Business Trade Practices Act ("ICFA"), and the Missouri Merchandising Practices Act ("MMPA"). (*See* Compl. [D.E.#1] ¶¶ 40-74.) In fact, throughout the Complaint, Plaintiff, although affirmatively pleading that the three Defendants are distinct legal entities, treats all three Defendants as a single entity acting in a concerted manner, referring to them collectively as "TransUnion" or "Defendants." (*See id.* ¶ 1; *see, e.g., id.* ¶¶ 43, 49, 52, 54-59, 64-67, 72.)

## III. ARGUMENT

### A. The Federal Arbitration Act Governs This Motion.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the determination of whether Plaintiff's claims must be arbitrated under the Arbitration Provision agreed to by Plaintiff. The FAA governs a "contract evidencing a transaction involving commerce" containing an arbitration provision. 9 U.S.C. § 2. In enacting Section 2 of the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The United States Supreme Court has described the FAA as embodying "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1742 (2011) (internal

quotations and citations omitted).

Here, Plaintiff entered into the Service Agreement (which contains the Arbitration Provision) with TransUnion Interactive when he accepted the Service Agreement before he purchased the product at issue. (*See* Anderson Decl. ¶¶ 6-8.) Plaintiff currently resides in Missouri. (*See* Compl. ¶ 6.) TransUnion Interactive is a Delaware corporation headquartered in California. (*See id.* ¶¶ 21-22; Anderson Decl. ¶ 3.)[2] Moreover, the Arbitration Provision explicitly provides that Plaintiff "and TransUnion Interactive are entering into this arbitration agreement in connection with a transaction involving interstate commerce. Accordingly, this arbitration agreement and any proceedings hereunder shall be governed by and enforceable under the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 1-16." (Service Agreement at 9.) Accordingly, the Service Agreement and its Arbitration Provision are each an agreement "involving commerce" that is subject to the FAA.

**B.      Plaintiff Should Be Compelled to Arbitrate His Claims Against All Defendants on an Individual Basis.**

The United States Supreme Court and the Seventh Circuit have held that arbitration clauses are to be liberally enforced, in accordance with Congress' declaration in the FAA of a strong national policy favoring arbitration of disputes. *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 667 (2012); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Gore v. Alltel Commc'ns., LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Accordingly, courts must compel a party to arbitrate if:  (1) a valid arbitration agreement exists between the parties; and (2) the dispute falls within the terms of that agreement. *See Dean Witter*

---

[2]      Although not parties to the Service Agreement, both TU Corp. and Trans Union LLC are citizens of a state different from Plaintiff: both entities are organized under Delaware law and both are headquartered in Illinois. (*See* Compl. ¶¶ 17-20.)

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Sherman v. AT&T Inc.*, No. 11 C 5857, 2012 WL 1021823, at *1 (N.D. Ill. Mar. 26, 2012). The burden of establishing that the claims are unsuitable for arbitration falls on the party opposed to arbitration. *See Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Plaintiff cannot meet that burden here because he entered into valid arbitration agreement and all of his claims against all the Defendants fall within the scope of its terms.

1. A valid arbitration agreement exists here.

There is no question that Plaintiff entered into a valid arbitration agreement when he purchased the credit score product from TransUnion Interactive over the internet. In order to complete that purchase, Plaintiff had to first agree to the terms and conditions of the Service Agreement displayed on the website. (Anderson Decl. ¶¶ 6-7.) If Plaintiff did not accept the terms of the Service Agreement, the transaction would not have been completed. (*See id.*) Here, Plaintiff did electronically accept the terms of the Service Agreement. (*Id.* ¶ 8.) The Seventh Circuit, in enforcing such "clickwrap" agreements, has recognized that "signif[ying] agreement by clicking on a box on the screen" is "common in Internet commerce." *Treiber & Straub, Inc. v. U.P.S. Inc.*, 474 F.3d 379, 382 (7th Cir. 2007). Indeed, the laws of both Delaware (the governing law under the Service Agreement's choice-of-law provision (at 8)) and Missouri (where Plaintiff resides) recognize the validity of such agreements. *See Newell Rubbermaid Inc. v. Storm*, No. 9398-VCN, 2014 WL 1266827, at *8 (Del. Ch. Mar. 27, 2014); *Burcham v. Expedia, Inc.*, No. 4:07CV963 CDP, 2009 WL 586513, at *2-4 (E.D. Mo. Mar. 6, 2009); *see also Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. App. S.D. 2009) ("Courts routinely enforce clickwraps.").

Moreover, although the Service Agreement gave Plaintiff the right to reject the Arbitration Provision (*see* Service Agreement at 8), Plaintiff never exercised that right. (*See*

Anderson Decl. ¶ 8.) When a consumer has been provided with contractual terms and given an opportunity to either reject the terms or accept the transaction, a consumer that does not reject the terms of the transaction is bound by its terms. *See, e.g., Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996). Thus, there is no question that Plaintiff has a binding contractual obligation to arbitrate any disputes falling within the scope of the Arbitration Provision.

### 2. The Arbitration Provision covers all of Plaintiff's claims.

The Service Agreement's Arbitration Provision encompasses all of the claims Plaintiff asserts in the Complaint. Therefore, Plaintiff must be compelled to arbitrate those claims under the FAA. That Provision provides, in relevant, part that:

> [A]ny dispute, claim or controversy ("Claim") between you and TransUnion Interactive or its parent, TransUnion, our agents, contractors, employees, officers or assignees, arising out of or relating in any way to this Agreement, your purchase and use of a TransUnion Interactive product or use of this Site, including, without limitation, tort and contract claims, claims based on any federal, state or local statute, law or regulation and the issue of arbitrability must be resolved exclusively by binding arbitration. . ..

(Service Agreement at 8.) In determining the scope of an arbitration provision, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *accord Gore*, 666 F.3d at 1032. Additionally, if the arbitration agreement contains "broad" phrasing, unless there is an express provision excluding a particular grievance from arbitration, "only the <u>most forceful evidence</u> of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotations omitted, emphasis in original). Here, based upon the claims Plaintiff alleges in his Complaint, the broad Arbitration Provision governs all of the Plaintiff's claims against all of the Defendants.

Plaintiff alleges here that the Defendants collectively violated three statutes in connection with Plaintiff's purchase of the credit report product at issue: the FCRA, the ICFA, and the MMPA. (*See* Compl. ¶¶ 40-74.) Plaintiff purchased that product from TransUnion Interactive. (*See* Anderson Decl. ¶ 5.) Consequently, his claims "aris[e] out of or relat[e] in any way to . . . [his] purchase and use of a TransUnion Interactive product" and thus are subject to arbitration under the Arbitration Provision.

That Plaintiff's claims are brought under a federal statute, specifically the FCRA, and state statutes, specifically the ICFA and MMPA, does not change the conclusion.[3] The United States Supreme Court in *CompuCredit Corp. v. Greenwood* reaffirmed that, absent a "contrary congressional command," the FAA requires the compulsion of arbitration of federal statutory claims. 132 S. Ct. at 669 (internal citations omitted). There, the Supreme Court held the plaintiffs were compelled to arbitrate their claims under the federal Credit Repair Organization Act, 15 U.S.C. § 1679, *et seq.*, because the statute was "silent on whether claims under the Act can proceed in an arbitrable forum." *Id.* at 673. Here, the FCRA is similarly silent, and "courts routinely deem FCRA claims arbitrable." *Mitchell v. Verizon Wireless*, No. 05 C 511, 2006 WL 862879, at *3 (N.D. Ill. Mar. 31, 2006); *accord Deaton v. Overstock.com, Inc.*, No. 07-cv-643-JPG, 2007 WL 4569874, at *2 (S.D. Ill. Dec. 27, 2007); *Jacobsen v. J.K. Pontiac GMC Truck, Inc.,* No. 01 C 4312, 2001 WL 1568817, at *6 (N.D. Ill. Dec. 10, 2001).

Likewise, courts will compel arbitration of claims under state consumer protection statutes, including the ICFA and MMPA. *See Chambers v. Aviva Life & Annuity Co.*, No. 12 C 9589, 2013 WL 1345455, at *3 (N.D. Ill. Mar. 26, 2013) (ICFA claim); *Kirby v. Grand Crowne*

---

[3]     The Arbitration Provision expressly encompasses "claims based on any federal, state or local statute, law or regulation." (Service Agreement at 8.)

*Travel Network, LLC*, 229 S.W.3d 253, 255 (Mo. App. Ct. 2007) (MMPA claim); *accord Pick v. Discover Fin. Servs., Inc.*, No. Civ.A. 00-935-SLR, 2001 WL 1180278, at *3 (D. Del. Sept. 28, 2001) (compelling arbitration of Delaware Consumer Fraud Act claim). Therefore, Plaintiff should be compelled to arbitrate his purported statutory claims under the FCRA, ICFA, and MMPA.

### 3.    Plaintiff must arbitrate all of his claims against all defendants.

Not only does the Service Agreement's Arbitration Provision require that Plaintiff arbitrate his substantive claims, but it further requires him to arbitrate those claims against all of the Defendants – TransUnion Interactive, Trans Union LLC, and TU Corp.

First, the Arbitration Provision specifically requires arbitration of all "Claims" that are asserted between Plaintiff and "TransUnion Interactive or its parent, TransUnion [LLC]." (Service Agreement at 8.) Consequently, Plaintiff must arbitrate the claims he asserts here against those two defendants.

Second, Plaintiff similarly must arbitrate the claims he asserts here against TU Corp., even though that entity is not a signatory or party to the Service Agreement. Under governing Delaware law,[4] a non-signatory to an arbitration agreement can compel arbitration, under an equitable estoppel theory, where a signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Wilcox & Fetzer, Ltd. v. Crobett & Wilcox*, No. Civ.A.2037-N, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006); *accord Ishimaru v. Fung*, No. Civ.A. 929, 2005 WL 2899680, at

---

[4]    The Service Agreement contains a choice-of-law provision selecting Delaware as the governing law: "The laws applicable to the interpretation of these terms and conditions shall be the laws of the State of Delaware, USA, and applicable federal law, without regard to any conflict of law provisions." (Service Agreement at 8.)

*18 (Del. Ch. Oct. 26, 2005).[5] There is sound policy behind this rule. If the signatory's claims against one of the collectively-acting defendants could remain in court (because that party was a nonsignatory), "the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Wilcox & Fetzer*, 2006 WL 2473665, at *5. Here, Plaintiff alleges just such interdependent and concerted misconduct by the nonsignatory TU Corp. with the two signatories, TransUnion Interactive and its parent, Trans Union LLC. For example, Plaintiff alleges that those entities' "businesses operate as a 'consumer reporting agency' as the FCRA defines that term in 15 U.S.C. § 1681a(f)." (Compl. ¶ 42.) Indeed, other than their respective states of incorporation and headquarters locations, (*see id.* ¶¶ 17-23), the Complaint lacks any allegations differentiating among the Defendants. That is, throughout the Complaint Plaintiff treats all three Defendants as a single entity acting in a concerted manner, referring to them collectively as "TransUnion" or "Defendants." (*See* Compl. ¶ 1; *see, e.g., id.* ¶¶ 43, 49, 52, 54-59, 64-67, 72.) Accordingly, because Plaintiff clearly alleges that TU Corp. was involved in "substantially interdependent and concerted misconduct" with TransUnion Interactive and Trans Union LLC, he must arbitrate his claims against TU Corp. pursuant to the Arbitration Provision. *See Wilcox & Fetzer*, 2006 WL 2473665, at *5-6; *Ishimaru*, 2005 WL 2899680, at *18.

---

[5] Courts within this district have similarly compelled arbitration of claims asserted against non-signatory parties where the allegations were the same against the defendants and an interconnected relationship. *See, e.g., Goldberg v. Focus Affiliates, Inc.*, 152 F. Supp. 2d 978, 982-83 (N.D. Ill. 2001) (compelling arbitration where alleged non-signatory party was signatory's agent and the claims against the two parties were "substantively the same"); *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1005 (N.D. Ill. 2001) (compelling arbitration involving allegations of conspiracy by all the defendants); *Messing v. Rosenkrantz*, 872 F. Supp. 539, 541-42 (N.D. Ill. 1995) (compelling arbitration where signatory alleged that non-signatories acted as signatory-defendant's agent and allegations against the defendants "are identical").

4. The Arbitration Provision requires Plaintiff to arbitrate his claims
individually, not as part of a putative class action.

Under the Arbitration Provision, Plaintiff must be compelled to arbitrate his claims on an individual basis, rather than on behalf of a putative class. The arbitration provision states, in part, "NO CLAIM, DISPUTE OR CONTROVERSY MAY BE CONSOLIDATED WITH A DISPUTE OF ANY OTHER PERSON IN ARBITRATION, OR RESOLVED ON A CLASS-WIDE BASIS BY A CLASS ACTION OR OTHER PROCEEDING . . . ." (Service Agreement at 9.) The United States Supreme Court has repeatedly upheld class action waivers in arbitration provisions as being enforceable under the FAA. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013); *Concepcion*, 131 S. Ct. at 1753. The Supreme Court has reasoned that "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748 (internal quotations omitted). That is, "parties may agree to limit the issues subject to arbitration . . . and to limit with whom a party will arbitrate its disputes." *Id.* at 1748-49 (internal citations omitted; emphasis in original). Here, the Arbitration Provision contains a clear prohibition on class-wide resolution of the claims subject to arbitration. (*See* Service Agreement at 9.) Thus under Section 2 of the FAA, Plaintiff should be ordered to arbitrate his claims as the Arbitration Provision requires: on an individual basis, not as part of a putative class action. *See Concepcion*, 131 S. Ct. at 1753.

**C.      In Addition to Ordering Plaintiff to Arbitrate His Claims on an Individual Basis, the Court Should Dismiss the Case in its Entirety.**

Rather than staying this case pending outcome of the arbitration of Plaintiff's individual claims, the Court should dismiss this case because, as defendant's explained in their earlier-filed motion to dismiss, this Court is not the proper venue for this action. (*See* [D.E. #15] at 14-15.) Moreover, as demonstrated above, as all of Plaintiff's claims are subject to arbitration, the proper

course is for this Court to dismiss this action. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) (holding that court properly dismissed case because "the arbitration clause was broad enough to bar all of the plaintiff's claims since it required [the plaintiff] to submit all claims to arbitration."); *Chambers*, 2013 WL 1345455, at *5 (dismissing case because "all of the claims are arbitrable" and noting that "a number of courts within this district have found that the Seventh Circuit would" allow the dismissal, rather than a stay, of cases involving arbitration where all the claims were subject to arbitration) (collecting cases). Accordingly, after ordering Plaintiff to arbitrate his claims on an individual basis, the Court should dismiss this action.

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendant's Motion to Compel Arbitration, enter an order compelling Plaintiff to arbitrate his claims only on an individual (not class) basis, and dismiss this action.

Dated: July 18, 2014

Respectfully submitted,

TRANSUNION CORP., TRANS UNION LLC, and TRANSUNION INTERACTIVE, INC.

By: s/ Michael O'Neil
       One of Their Attorneys

Michael O'Neil (ARDC# 6201736)
David Z. Smith (ARDC # 6256687)
Timothy R. Carraher (ARDC # 6299248)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
(312) 207-1000
(312) 207-6400 (fax)
michael.oneil@reedsmith.com
dzsmith@reedsmith.com
tcarraher@reedsmith.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on July 18, 2014, the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to attorneys of record.

Respectfully submitted,

By:  s/ Michael O'Neil
    Michael O'Neil (ARDC# 6201736)
    REED SMITH LLP
    10 South Wacker Drive, 40th Floor
    Chicago, IL 60606
    Telephone: (312) 207-1000
    Fax: (312) 207-6400
    michael.oneil@reedsmith.com

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GARY W. SGOUROS, on behalf of himself
and all others similar situated )
                                )
                                )     No. 14-cv-1850
     Plaintiff,               )
                                )
     v.                         )     Judge James B. Zagel
                                )
TRANSUNION CORP.; TRANS UNION LLC; )
and TRANS UNION INTERACTIVE, INC. )
                                )
     Defendants.          )

## DECLARATION OF KATE ANDERSON

I, Kate Anderson, declare if called upon to testify I could testify to the following based upon my own personal knowledge:

1.     I am currently employed as Compliance Consultant with Trans Union LLC. I was employed by TransUnion Interactive, Inc. ("TUI"), formerly known as TrueLink, Inc., since July 1996. I have had the same job duties and responsibilities with respect to TUI's operations since 2002.

2.     In the ordinary course of my employment, I have personal knowledge of TUI's electronic data systems, which include information identifying individuals who purchase products or services from TUI, through its websites, including www.truecredit.com and www.membership.tui.transunion.com. Information stored in TUI's electronic data systems is recorded and kept in the course of TUI's regularly conducted business activity. The exhibit attached to this Declaration is a business record of TUI. It was made at or near the time of the occurrence of the matters set forth in the attached record by, or from information transmitted by, a person with knowledge of those matters. The attached record was made in the course of the

regularly conducted business activities of TUI and as a regular practice of TUI. The attached record is a duplicate of an original.

3.     TUI is a business corporation incorporated in Delaware with its headquarters in San Luis Obispo, California.

4.     TUI provides internet-based products and services to consumers through its www.truecredit.com and www.membership.tui.transunion.com websites. These websites are internet portals through which individuals can purchase from TUI credit reports, credit monitoring, and other products and services relating to that individual's credit history. These websites are accessible via a link on the transunion.com website. An individual orders TUI's products and services over the internet and can access and view the products purchased through the online display.

5.     I have searched TUI's electronic data systems to determine whether TUI had a customer matching the name of Plaintiff, Gary W. Sgouros, who purchased products or services from TUI on or about June 10, 2013. Based on that search, which was conducted in accordance with TUI's standard business practices, I have determined that on June 10, 2013, Mr. Sgouros purchased the product called 3-in-1 Credit Reports, Credit Scores & Debt Analysis.

6.     Individuals who purchase credit scores, credit reports and other products and services through a TUI website are first required to agree to the terms of a Service Agreement, which are displayed on the website.

7.     Before an initial order for a product or service with TUI can be accepted and processed, an individual must click an "I Accept & Continue to Step 3" button that follows the

Service Agreement. If a consumer does not click "I Accept and Continue to Step 3," the transaction cannot be completed.

8.     A true and correct copy of the Service Agreement used by TUI at the time of Mr. Sgouros's purchase of 3-in-1 Credit Reports, Credit Scores & Debt Analysis on June 10, 2013, is attached hereto as Exhibit A. I have determined that the terms set forth in Exhibit A were electronically accepted at the time Mr. Sgouros placed his order on June 10, 2013. I have also determined, based on the business records of TUI, that Mr. Sgouros did not reject the arbitration provision included in the Service Agreement.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this /ˢᵗ day of July, 2014 at San Luis Obispo, California.

Kate Anderson

# EXHIBIT A

Service Agreement

Welcome to the TransUnion Interactive web site, tui.transunion.com, (the "Site"). This Service Agreement ("Agreement") contains the terms and conditions upon which you ("you," or the "member") may access and use TransUnion Credit Monitoring or any products through the Site. You agree to be legally bound by these terms.

THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE AND A CLASS ACTION WAIVER.

YOU MUST ACCEPT THE TERMS OF THIS AGREEMENT BEFORE YOU WILL BE PERMITTED TO REGISTER FOR AND PURCHASE THIS PRODUCT.

TransUnion Interactive is not a credit repair organization, or similarly regulated organization under other applicable law, and does not provide credit repair advice. We do not claim that we are able to "clean up" or "improve" your credit record, credit history or credit rating.

TransUnion credit monitoring monitors only the credit file associated with the purchasing consumer, and does not monitor, compare or cross-references the credit file associated with the purchasing consumer to any other credit file(s) maintained by the applicable credit bureau(s).

IN ORDER TO DELIVER THE PRODUCT TO YOU, WE MUST OBTAIN YOUR CONSUMER CREDIT FILE AND OTHER INFORMATION. YOU HEREBY AUTHORIZE TRANSUNION INTERACTIVE TO ACCESS YOUR CREDIT FILES FROM EACH NATIONAL CREDIT REPORTING AGENCY AND TO EXCHANGE CERTAIN INFORMATION ABOUT YOU WITH EACH SUCH NATIONAL CREDIT REPORTING AGENCY IN ORDER TO VERIFY YOUR IDENTITY AND PROVIDES A PRODUCT TO YOU.

MANY GOVERNMENT RECORDS ARE AVAILABLE FREE OR AT A NOMINAL COST FROM CERTAIN GOVERNMENT AGENCIES. IN ADDITION, CREDIT REPORTING AGENCIES ARE REQUIRED BY APPLICABLE FEDERAL AND STATE LAW TO FURNISH YOU A COPY OF YOUR CREDIT REPORT UPON REQUEST, IN SOME INSTANCES AT NO CHARGE, OR FOR A NOMINAL FEE, SEE "FAIR CREDIT REPORTING ACT" BELOW.

Special Services

FOR CUSTOMERS WITH A GIFT CERTIFICATE CODE, OBTAINED THROUGH A THIRD-PARTY PROVIDER: YOUR GIFT CERTIFICATE ENTITLES YOU TO RECEIVE FREE PRODUCT(S) PURSUANT TO THE TERMS OUTLINED BY YOUR PROVIDER. THERE WILL BE NO CHARGE MADE TO YOU FOR THESE SERVICES, THE SERVICES WILL NOT BE RENEWED AT THE END OF THE SERVICE PERIOD AND YOUR CREDIT CARD WILL NOT BE CHARGED. IF YOU DESIRE SERVICES FROM TRANSUNION INTERACTIVE AFTER THE END OF THE SERVICE PERIOD PROVIDED BY YOUR FINANCIAL INSTITUTION THROUGH THE GIFT CERTIFICATE, IT WILL BE NECESSARY TO ORDER THE PRODUCTS AVAILABLE AT THE THEN MARKET RATE.

Free Trial

The terms of any free trial are specific only to the product subject to the free trial. TransUnion Interactive will verify your billing information before processing your order. An authorization will be requested from your billing account to make sure it is valid and in good standing. TransUnion Interactive will not bill your account until the relevant free trial period is completed and you have not cancelled your subscription

during such trial period as provided below. If you upgrade to a new monitoring subscription during a free trial, you will lose all benefits to the trial and will be billed immediately for the upgraded service. You may cancel your subscription at any time during the trial period without charge. If you wish to continue your subscription, do nothing and your subscription will automatically continue without interruption. The monthly fee (plus sales tax, if applicable) will be charged at the conclusion of the trial period to the credit card or bank account you designated as your preference or, if you have not designated a preference, the account that was most recently used on the Site and your subscription will continue automatically, billable monthly at the prevailing rate. To cancel your subscription please contact our Customer Service Team. For contact information and hours of service go to https://tui.transunion.com/contact.jsp.

When you become a member entitled to Credit Monitoring, you understand that it is a membership that automatically renews itself every month indefinitely without action by the member on the anniversary day of your initial purchase. The monthly membership fee will be billed to the credit, debit or bank account that you designated as your preference, or if you have not designated a preference, to the account most recently used on the Site. Should the billing fail to authorize, you will be notified via email immediately. The benefits of your membership (including, without limitation, online credit reports and daily monitoring alerts) will be suspended until payment is received provided payment is received within 25 days. If payment is not received within 25 days, your membership will be cancelled. An enrollee whose membership fee has been paid is entitled to all privileges included in the membership until the membership is canceled by the enrolled member or otherwise terminated as described later in this document. Upon cancellation, the member loses access to the areas of the Site designated for members only and loses access to the member's data and other benefits. This could include any credit data and analyses that have been displayed during the membership. A member may cancel at any time. Should you decide to cancel your subscription a Customer Service representative can arrange for all future renewal fees to be canceled. However, please note that neither full nor pro-rated refunds will be given for the current month. Any free trial is available one time only per customer. Once any free trial has been canceled all subsequent orders will be billable at the prevailing monthly subscription rate.

Membership

Credit reports, credit scores and debt analysis will be available for a period of up to one year or until you update your report, otherwise, products will be provided for the period stated in the product description. Enrollment in a monitoring program will usually occur within 24 hours but may be delayed. If TransUnion Interactive is unable to confirm enrollment for any reason, notification will be made by TransUnion Interactive to the email address we have on record for you at the time of the notice.

Memberships, such as monitoring products, automatically renew indefinitely without action by the member, and the membership fee is charged to the member at the time of renewal. An enrollee whose membership fee has been paid is entitled to all privileges included in the membership until the membership is cancelled by the enrolled member or otherwise terminated as described later in this document. Consent to obtain credit data to fulfill the benefits of subscription products shall be valid under the program until cancelled. Upon cancellation, the member loses access to the areas of the Site designated for members only and loses access to member's data and other benefits, including, any discounted 3-Bureau Credit Report and Scores separately purchased during the subscription. This could include any credit data and analyses that have been displayed during the membership. A member may cancel at any time. To cancel your membership please contact our Customer Service Team. For contact information and hours of service go to https://tui.transunion.com/contact.jsp.

When you become a member entitled to ID Fraud-Watch™, Weekly Credit Alerts, TransUnion Credit Monitoring Basic, TransUnion Credit Monitoring, Debt Monitoring and/or Credit Score Monitoring, you understand that it is a membership that automatically renews itself indefinitely. TransUnion Interactive

will charge the membership fee to the credit card or bank account you designated as your preference or, if you have not designated a preference, the account that was most recently used on the Site and your membership will continue automatically, billable monthly at the prevailing rate. Should your billing account fail to authorize, you will be notified via email immediately. The benefits of your membership (including, without limitation, online credit reports and credit monitoring alerts) will be suspended until payment is received provided payment is received within 25 days. If payment is not received within 25 days, your membership will be cancelled.

Credit Monitoring

Credit Monitoring (including TransUnion Credit Monitoring Basic, TransUnion Credit Monitoring, and other credit monitoring products offered on or through this site) is provided by TransUnion Interactive, Inc. Credit Monitoring monitors one or more of your credit files, depending upon the type of Credit Monitoring you purchase, which are separately owned and/or maintained by each of the applicable credit bureaus: TransUnion LLC, Experian, and Equifax. Credit Monitoring monitors the credit file most closely identified with you based on multiple identifying factors such as first, middle and last names, current and former addresses, Social Security number and date of birth. Credit Monitoring may not advise or alert you if an item of identifying information about you (including your name or address or Social Security number) is contained in the applicable credit bureau's credit file of another person, and will not provide you with any information contained in another individual's credit file. Credit Monitoring does not monitor, compare or cross-reference your credit file (s) with the credit files(s) of any other person.

General Terms

TransUnion Interactive maintains the Site to provide you with information about our memberships, products and services and to facilitate communication with us and our affiliates. From time to time we may revise these terms and conditions. Revisions will be effective when posted or as otherwise stated. Additional terms and conditions may apply to specifics of our memberships, products and services or to participate in our affiliate program, contests or surveys.

The images, text, screens, web pages, materials, data, content and other information ("Content") used and displayed on the Site, including but not limited to TransUnion®, TransUnion Interactive®, TrueCredit®, TrueCredit® and Design, and Manage Your Credit Manage Your Life™ are the property of TransUnion Interactive or its licensors and are protected by copyright, trademark and other laws. In addition to its rights in individual elements of the Content within the Site, TransUnion Interactive owns copyright or patent rights in the selection, coordination, arrangement and enhancement of such Content. You may copy the Content from the Site for your personal or educational use only, provided that each copy includes any copyright, trademark or service mark notice or attribution as they appear on the pages copied. Except as provided in the preceding sentence, none of the Content may be copied, displayed, distributed, downloaded, licensed, modified, published, reposted, reproduced, reused, sold, transmitted, used to create a derivative work or otherwise used for public or commercial purposes without the express written permission of TransUnion Interactive or the owner of the Content.

OUR SITE, INCLUDING ALL CONTENT, MEMBERSHIPS, PRODUCTS AND SERVICES MADE AVAILABLE ON OR ACCESSED THROUGH THIS SITE, IS PROVIDED TO YOU "AS IS". TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, NEITHER TRANSUNION INTERACTIVE NOR ITS AFFILIATES MAKE ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER AS TO THE CONTENT, MEMBERSHIPS, PRODUCTS OR SERVICES AVAILABLE ON OR ACCESSED THROUGH THE SITE, THAT A USER WILL HAVE CONTINUOUS, UNINTERRUPTED OR SECURE ACCESS TO OUR SITE, MEMBERSHIPS, PRODUCTS OR SERVICES OR THAT OUR SITE, MEMBERSHIPS, PRODUCTS OR SERVICES

WILL BE ERROR-FREE. IN ADDITION, TRANSUNION INTERACTIVE AND ITS AFFILIATES DISCLAIM ALL EXPRESS OR IMPLIED WARRANTIES, INCLUDING TITLE, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, NON- INFRINGEMENT AND INFORMATIONAL CONTENT. THEREFORE, YOU AGREE THAT YOUR ACCESS TO AND USE OF OUR SITE, MEMBERSHIPS, PRODUCTS, SERVICES AND CONTENT ARE AT YOUR OWN RISK. BY USING OUR SITE, YOU ACKNOWLEDGE AND AGREE THAT NEITHER TRANSUNION INTERACTIVE NOR ITS AFFILIATES HAVE ANY LIABILITY TO YOU (WHETHER BASED IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) FOR ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES ARISING OUT OF OR IN ANY WAY CONNECTED WITH YOUR ACCESS TO OR USE OF OUR SITE, CONTENT, MEMBERSHIPS, PRODUCTS OR SERVICES (EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), INCLUDING LIABILITY ASSOCIATED WITH ANY VIRUSES WHICH MAY INFECT YOUR COMPUTER EQUIPMENT.

TransUnion Interactive is not responsible for any overdraft/over-the-limit charges or bank fees triggered by your order being processed or billed. We suggest using a credit card rather than a debit card. Refunds will not be issued if we have successfully located and delivered your order to you.

Fraud Resolution Services

If you are a credit monitoring member, TransUnion Interactive will provide you with certain fraud resolution services outlined below (the "Fraud Resolution Services") during the period that you are a member. TransUnion Interactive and its third party service providers are obligated only to provide services in the United States to members domiciled in the United States. The Fraud Resolution Services are provided by Trans Union, LLC, the parent of TransUnion Interactive, under an agreement with TransUnion Interactive.

In no event shall TransUnion Interactive or Trans Union, LLC be liable for consequential damages, for any delay in Fraud Resolution Services, or for loss of use of funds during the period that your service request is being processed. TransUnion Interactive and TransUnion, LLC shall not be obligated to provide Fraud Resolution Services, nor shall it be liable, if you have not provided complete, accurate and current information relating to your service request. TransUnion Interactive and Trans Union, LLC are not obligated or responsible for providing Fraud Resolution Services for any service request based on (a) an act of fraud, deceit, collusion, dishonesty or criminal act by you or any person acting in concert with you, or by any authorized representative of you, whether acting alone or in collusion with you or others, (b) authorized charges that you have disputed based on the quality of goods or services, (c) authorized account transactions or trades that you have disputed, or are disputing, based on the execution (or non-execution) of electronic transfers, trades or other verbal or written instructions or directions, (d) losses, damages or expenses arising out of any business pursuits, (e) any losses, damages or expenses that were incurred or commenced prior to your credit monitoring membership commencement, and (f) theft or damages of traveler's checks, tickets of any kind, negotiable instruments, cash or its equivalent, circulating currency, passports, documents, real property, animals, living plants or consumable items, motorized vehicles of any type, watercraft, aircraft, and items intended for storage, transport, display or habitation.

TRANSUNION INTERACTIVE AND TRANSUNION EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS AGREEMENT OR FRAUD RESOLUTION SERVICES HEREUNDER. TRANSUNION INTERACTIVE AND TRANSUNION DISCLAIM ALL IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE, AND FITNESS FOR A PARTICULAR PURPOSE. TRANSUNION INTERACTIVE AND TRANSUNION DO NOT WARRANT THAT ANY FRAUD RESOLUTION SERVICES PROVIDED PURSUANT TO THIS

AGREEMENT ARE NON-INFRINGING, THAT THEY WILL MEET YOUR REQUIREMENTS OR THAT THEIR OPERATION WILL BE UNINTERRUPTED OR ERROR FREE. TRANSUNION INTERACTIVE AND TRANSUNION'S LIABILITY IS LIMITED TO THE SERVICES EXPLICITLY SET FORTH IN THIS AGREEMENT. IN NO EVENT SHALL TRANSUNION INTERACTIVE OR TRANSUNION BE LIABLE FOR ANY DAMAGES OF ANY KIND INCLUDING DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, (WHICH SHALL INCLUDE WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, OR OTHER PECUNIARY LOSS). IN NO EVENT SHALL TRANSUNION INTERACTIVE OR TRANSUNION BE LIABLE FOR ANY LOSS ARISING OUT OF TRANSUNION INTERACTIVE OR TRANSUNION'S PERFORMANCE OR NON-PERFORMANCE OF ITS SERVICE. IN NO EVENT SHALL TRANSUNION BE LIABLE FOR ANY DELAY IN PROVIDING SERVICES, OR DAMAGES RESULTING FROM ANY DELAY IN SERVICES. IN NO EVENT SHALL TRANSUNION INTERACTIVE OR TRANSUNION HAVE ANY ADDITIONAL LIABILITY TO YOU EXCEPT AS STATED HEREIN. IN NO EVENT SHALL THE LIABILITY OF TRANSUNION INTERACTIVE AND TRANSUNION EXCEED THE FEES YOU PAID FOR THE FRAUD RESOLUTION SERVICES IN THE PRECEDING TWELVE MONTHS.

Identity Theft Insurance

The identity theft insurance benefit for credit monitoring members is underwritten and administered by AIG and its affiliates under a master group policy issued to TransUnion Interactive for the benefit of credit monitoring members. A summary of the terms of coverage are set forth on the certificate of insurance located at http://tui.transunion.com/popup/idTheftInsurancePopup.jsp. The complete policy is available from TransUnion Interactive on request. AIG administers all claims and TransUnion Interactive shall have no responsibility with respect to such identify theft benefit.

Credit Lock

In the event you purchase a product that includes Credit Lock, you acknowledge that some of the features of Credit Lock may be available to you under the laws of certain states. In the event you cancel any subscription that includes Credit Lock as a benefit you will cease receiving Credit Lock upon cancellation.

You acknowledge that Credit Lock will only prevent delivery of your TransUnion credit report. It will not apply to your Equifax or Experian credit report. Remember that while a credit lock prevents most third party access to your credit report, a third party may access a locked report in certain instances that are considered a low risk for identity theft, such as official government investigations, collection activities and insurance underwriting and claims administration.

Registration and Accurate Information

If you decide to register on our Site, become a member of one of our membership programs, purchase our products or services or participate in our affiliate program, contests or surveys, you may be required to register, provide personal information, and select a user name and password. You agree to provide accurate information in your registration and not to share your password with third parties. You agree not to impersonate another person or to select or use a user name or password of another person. You agree to notify TransUnion Interactive promptly of any unauthorized use of your account and of any loss, theft or disclosure of your password. Failure to comply with these requirements shall constitute a breach of these terms and conditions and shall constitute grounds for immediate termination of your TransUnion

Interactive account and your right to use the Site. Online access to consumer credit report information is subject to verification of the identity of the user.

Our Privacy Policy

By using our Site, becoming a member of one of our membership programs, or purchasing any of our products or services, you agree that we may use and share your personal information in accordance with the terms of our Privacy Statement. In the event you indicate that you want to receive offers from TransUnion Interactive, your information may be used to serve relevant ads to you when you visit the site. Our privacy statement can be reached from the link at the top of this page.

Fair Credit Reporting Act

The Fair Credit Reporting Act allows you to obtain from each credit reporting agency a disclosure of all the information in your credit file at the time of the request. Full disclosure of information in your file at a credit reporting agency must be obtained directly from such credit reporting agency. The credit reports provided or requested through our Site are not intended to constitute the disclosure of information by a credit reporting agency as required by the Fair Credit Reporting Act or similar laws.

Under the Fair Credit Reporting Act you are entitled to receive an annual free disclosure of your credit report from each of the national credit reporting agencies. For more information visit the credit report section in the Learning Center, available from most pages of the Site.

You are entitled to receive a free copy of your credit report from a credit reporting agency if:

- You have been denied or were otherwise notified of an adverse action related to credit, insurance, employment, or a government granted license or other government granted benefit within the past sixty (60) days based on information in a credit report provided by such agency.
- You have been denied house/apartment rental or were required to pay a higher deposit than usually required within the past sixty (60) days based on information in a credit report provided by such agency.
- You certify in writing that you are unemployed and intend to apply for employment during the sixty (60) day period beginning on the date on which you made such certification.
- You certify in writing that you are a recipient of public welfare assistance.
- You certify in writing that you have reason to believe that your file at such credit reporting agency contains inaccurate information due to fraud.

In addition, if you reside in the state of Colorado, Maine, Maryland, Massachusetts, New Jersey, or Vermont, you are entitled to receive a free copy of your credit report once a year and if you reside in the state of Georgia, you are entitled to receive a free copy of your credit report twice a year. Otherwise, a consumer reporting agency may impose a reasonable charge for providing you with a copy of your credit report.

The Fair Credit Reporting Act provides that you may dispute inaccurate or incomplete information in your credit report. YOU ARE NOT REQUIRED TO PURCHASE YOUR CREDIT REPORT FROM TRANSUNION INTERACTIVE IN ORDER TO DISPUTE INACCURATE OR INCOMPLETE INFORMATION IN YOUR REPORT OR TO RECEIVE A COPY OF YOUR REPORT FROM EQUIFAX, EXPERIAN OR TRANSUNION, THE THREE NATIONAL CREDIT REPORTING AGENCIES, OR FROM ANY OTHER CREDIT REPORTING AGENCY.

It may be the policies of Equifax, Experian and/or TransUnion to provide a complimentary copy of the consumer credit report under circumstances other than those described above. If you wish to contact Equifax, Experian or TransUnion to obtain a copy of your credit report directly from such agency or if you wish to dispute information contained in an Equifax, Experian or TransUnion credit report file, see the contact information and dispute process description contained in the Learning Center or from the inaccuracies tab on your credit report. The form of credit report and related disclosures provided directly by such agencies to you may differ from those provided by TransUnion Interactive.

TransUnion Interactive's online credit report has been specially designed for consumer ease-of-use. Color illustrations, analysis information and helpful links on TransUnion Interactive's credit report make it easy for you to understand and manage your credit.

Term and Termination; Modification

This Agreement will take effect at the time you click "I Accept," and shall terminate (a) when the member cancels his/her membership by contacting TransUnion Interactive via the toll-free number set forth on the web site for cancellations, or (b) upon termination of your membership or (c) if TransUnion Interactive discontinues providing any membership, subject to your right to receive membership benefits that you have paid for or to obtain a refund of a portion of your payment.

TransUnion Interactive products shall not be used in a manner that defrauds or otherwise abuses the credit reporting or credit scoring systems. TransUnion Interactive has the right to suspend or terminate your use of any product or access to our sites if we determine, in our sole discretion, that your use of our products has abused the credit reporting or credit scoring systems. Further, you agree that TransUnion Interactive will not be liable to you or any third party if TransUnion Interactive suspends or terminates your access for any reason.

TransUnion Interactive may (i) change the terms of this Agreement or the feature of the membership products, or (ii) change the Site, including eliminating or discontinuing any content or feature of the Site, restricting the hours of availability, or limiting the amount of use permitted, by posting notice of such modification on a page of the Site before the modification takes effect. All changes shall be effective immediately upon posting of such notice. If you use the Site and/or your membership after TransUnion Interactive has notified you of a change in the Agreement, you agree to be bound by all of the changes. You are expected to review the Site periodically to ensure familiarity with any posted notices of modification.

Notices

You should send any notices or other communications regarding our Site, your membership, products or services to TransUnion Interactive, Inc., 100 Cross Street, Suite 202, San Luis Obispo, CA 93401.

TrueCredit is a trademark of TransUnion Interactive, Inc., a Delaware corporation based in San Luis Obispo, California.

Except as otherwise provided, we may send any notices to you to the most recent e-mail address you have provided to us or, if you have not provided an e-mail address, to any e-mail or postal address that we believe is your address. If you wish to update your registration information, please log in to your account and visit the 'Your Account' section from the main menu.

Applicable Law

The laws applicable to the interpretation of these terms and conditions shall be the laws of the State of Delaware, USA, and applicable federal law, without regard to any conflict of law provisions. TransUnion Interactive can provide credit reports only for individuals who have established credit in the United States. Those who choose to access this Site, or become a member in one of our membership programs, from outside the United States do so on their own initiative and are responsible for compliance with local laws. You agree that any and all disputes arising under this Agreement or out of TransUnion Interactive's provision of services to you, pursuant to this membership or otherwise, if submitted to a court of law shall be submitted to the state and federal courts of New Castle County, Delaware, USA.

Policy Regarding Children

We define children as individuals under the age of 16. Our Web Site is not intended for the use of children and we do not intend to collect information about children through our Web Site. You must be at least 18 to access any products through this website or to join TransUnion Credit Monitoring as a member entitled to membership benefits.

AGREEMENT TO RESOLVE DISPUTES BY BINDING INDIVIDUAL ARBITRATION

THIS SECTION IS AN AGREEMENT TO ARBITRATE DISPUTES ("ARBITRATION AGREEMENT") THAT MAY ARISE AS A RESULT OF YOUR TRANSUNION INTERACTIVE MEMBERSHIPS, PRODUCTS OR SERVICES OR THE AGREEMENT. READ THIS SECTION CAREFULLY. YOU UNDERSTAND AND AGREE THAT BOTH PARTIES WOULD HAVE HAD A RIGHT TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT BOTH PARTIES BY ENTERING INTO THIS AGREEMENT CHOOSE TO HAVE ANY DISPUTE RESOLVED THROUGH BINDING INDIVIDUAL ARBITRATION. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE OR MAY BE MORE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL.

RIGHT TO REJECT ARBITRATION

YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. You must notify us in writing within sixty (60) days after the date you click-on to "Accept" the Agreement. You must send your request to: TransUnion Interactive, 100 Cross Street, Suite 202, San Luis Obispo, CA 93401. This request must include your 16-digit account number and a clear statement of your intent, such as "I reject the arbitration clause in the TransUnion Interactive Service Agreement."

In consideration for our willingness to provide you with access to TransUnion Interactive or any services or products through the Site as set forth in the Agreement, you and we agree as follows:

You agree that any dispute, claim or controversy ("Claim") between you and TransUnion Interactive or its parent, TransUnion, our agents, contractors, employees, officers or assignees, arising out of or relating in any way to this Agreement, your purchase and use of a TransUnion Interactive product or use of this Site, including, without limitation, tort and contract claims, claims based on any federal, state or local statute, law or regulation and the issue of arbitrability must be resolved exclusively by binding arbitration, except for the validity, scope or enforceability of this Arbitration Agreement. However, we will not demand arbitration pursuant to this Arbitration Agreement in connection with any individual Claim that you properly file and pursue in a small-claims court of your state or municipality, so long as the Claim is pending only in that court.

YOU UNDERSTAND AND AGREE THAT NO CLAIM, DISPUTE OR CONTROVERSY MAY BE CONSOLIDATED WITH A DISPUTE OF ANY OTHER PERSON IN ARBITRATION, OR RESOLVED ON A CLASS-WIDE BASIS BY A CLASS ACTION OR OTHER PROCEEDING AND YOU HEREBY WAIVE YOUR RIGHT TO COMMENCE OR PARTICIPATE IN ANY SUCH COLLECTIVE OR REPRESENTATIVE PROCEEDING. Unless a different procedure is required by applicable law, the arbitration will be conducted before a single arbitrator in accordance with the rules of the American Arbitration Association ("AAA"), including the AAA's Supplementary Procedures for Consumer-Related Disputes.

A demand for arbitration under this Arbitration Agreement may be made either before or after a lawsuit or other legal proceeding begins. However, any demand for arbitration that is made after a lawsuit or other legal proceeding has begun must be made within 90 days following the service of a complaint, third-party complaint, cross-claim or counterclaim or any answer thereto or any amendment to any of the above.

You understand and agree that before you take a dispute to arbitration under this Agreement, you must first contact our customer account representatives and give us an opportunity to resolve this dispute. Similarly, before TransUnion Interactive takes a dispute to arbitration, we must first attempt to resolve it by contacting you. If the dispute cannot be satisfactorily resolved within sixty days from the date you or TransUnion Interactive is notified by the other of a dispute, either party may then contact the AAA in writing and request arbitration of the dispute. Information about the arbitration process and the AAA's arbitration rules and its fees are available from the AAA on the Internet at http://www.adr.org.

The cost of any arbitration proceeding shall be divided as follows:

- If you initiate arbitration, you will be responsible for paying one half of the filing fee, or $125.00, whichever is less, when the demand for arbitration is made.
- If we initiate arbitration, we will be responsible for paying all arbitration costs.
- Regardless of who initiates the arbitration, you will not be responsible for any arbitration fees that exceed one half of the filing fee, or $125.00, whichever is less, or the fees that you would have incurred if the Claim had been brought in court.

Notwithstanding the foregoing, if you believe the cost of arbitration may be too burdensome, you may seek a waiver of the filing fee under the applicable arbitration rules. If you seek, but not qualify for such waiver, we will consider a written request from you to advance all or part of the filing fee.

The arbitration will be based only on the written submissions of the parties and the documents submitted to the AAA relating to the dispute, unless either party requests that the arbitration be conducted using the AAA's telephonic, online, or in-person procedures (additional charges may apply for these procedures). Any arbitration proceeding will take place at a location within the federal judicial district that includes the most recent U.S. Mail address we have on file for you at the time the Claim is filed or at any other mutually acceptable location.

The arbitrator will be required to follow relevant law and applicable judicial precedent to arrive at a decision and shall be empowered to grant whatever relief would be available in court. Where authorized by applicable law, the arbitrator's award may include attorneys' fees and other expenses. You understand and agree that you and TransUnion Interactive are entering into this arbitration agreement in connection with a transaction involving interstate commerce. Accordingly, this arbitration agreement and any proceedings hereunder shall be governed by and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1-16.

Any party to the arbitration proceeding may enter judgment upon the arbitration award in any court having jurisdiction over the arbitration award and may have that judgment enforced by any court having jurisdiction over that judgment. If this Arbitration Agreement is held to be invalid or otherwise unenforceable for any reason, it will be severed from the Agreement and the parties agree that exclusive jurisdiction and venue for any claims will be within the federal judicial district that includes the most recent U.S. Mail address we have on file for you at the time the Claim is filed or at any other mutually acceptable location.

BECAUSE YOUR PURCHASE AND USE OF A TRANSUNION INTERACTIVE PRODUCT OR USE OF THIS SITE REQUIRES THAT YOU CONSENT TO ARBITRATION OF YOUR CLAIMS OR DISPUTES, YOU WILL NOT HAVE THE RIGHT TO PURSUE YOUR CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTIVE PROCEEDING. OTHER RIGHTS THAT EITHER PARTY WOULD HAVE IF THAT PARTY WENT TO COURT, INCLUDING WITHOUT LIMITATION THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION.

The arbitrator's decision shall become final and binding after 30 days unless a party to the arbitration takes an appeal from the decision by making a written request to AAA. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration, and will make decisions based on the vote of the majority. We will advance any fees and costs required by AAA to commence any appeal. The appeal panel's decision shall be final and binding.

In the event of a conflict between the applicable arbitration rules and this Arbitration Agreement, this Arbitration Agreement shall govern. To the extent that the class action and collective action waivers contained herein are rendered invalid or unenforceable by applicable law as to any Claims, this Arbitration Agreement shall not apply to such Claims and thus we may elect to proceed exclusively in court. If any other provision of this Arbitration Agreement should be found invalid or unenforceable, such a determination shall not affect the enforceability of the remaining provisions, which shall remain and continue in full force and effect.

Miscellaneous

This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all written or oral agreements heretofore existing between the parties hereto are null and void.

If any portion of this Agreement is deemed invalid or unenforceable by a court of competent jurisdiction, the remaining portions will remain valid, enforceable, and carried into effect, to the fullest extent permissible. Any rights not expressly granted herein are reserved.

You represent that you have read this Agreement and TransUnion Interactive's Privacy Statement, understand their terms, and agree and intend to be legally bound by them. You acknowledge that, in providing you access to and use of the Site and your membership, TransUnion Interactive has relied on your agreement to be bound by the terms of this Agreement.