**REESE RICHMAN LLP**
Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Christopher B. Sanchez
*csanchez@caffertyclobes.com*
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Counsel for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARY W. SGOUROS, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>TRANSUNION CORP.; TRANS UNION LLC; and TRANSUNION INTERACTIVE, INC.,<br><br>              Defendants. | Case No. 1:14-cv-01850<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gary W. Sgouros ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, alleges the following, based upon his personal knowledge and the investigation of his counsel. Plaintiff believes substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUSBSTANTIVE ALLEGATIONS

1. This is a proposed class action against TransUnion Corp.; Trans Union LLC; and TransUnion Interactive, Inc. (collectively, "TransUnion" or "Defendants") for:

a. Charging consumers for credit scores (the "TransUnion Consumer Credit Scores") that TransUnion did not derive from a credit scoring model that TransUnion widely distributes to lenders but instead is based on a vastly inferior and inaccurate model that is essentially useless to consumers; and

b. misleading consumers concerning the TransUnion Consumer Credit Scores by failing to prominently and clearly inform the consumers that Defendants generated the TransUnion Consumer Credit Scores using a significantly different (and greatly inferior) credit scoring system than that used to give credit scores to lenders.

2. TransUnion does not generate the TransUnion Consumer Credit Scores using the credit scoring system lenders use in over 90% of United States lending decisions (*i.e.*, the FICO system). Instead, TransUnion generates the TransUnion Consumer Credit Scores using a credit scoring model that is not widely distribute to lenders, and, as a result, is vastly inferior and of little value to consumers (*i.e.*, the VantageScore system).

3.      As a result of the significant difference between the TransUnion Consumer Credit Scores sold that TransUnion sells to consumers, and the credit scores provided to the vast majority of lenders, the TransUnion Consumer Credit Scores do not meaningfully assist consumers in understanding how lenders will assess their creditworthiness or how lenders will make predictions about the consumers' future credit behavior, which is the very reason that Plaintiff and other consumers bought the TransUnion Consumer Credit Score in the first place.

4.      During the period from five years prior to the filing of this Complaint to the present, Defendants marketed the TransUnion Consumer Credit Scores in a manner that misled consumers, by concealing from the consumers that TransUnion generated the TransUnion Consumer Credit Scores using a credit scoring system that substantially differs (and is vastly inferior) from the credit scoring system United States lenders routinely use in connection with lending decisions.

5.      In connection with Defendants' sale of the TransUnion Consumer Credit Scores to consumers, Defendants failed to prominently and clearly disclose that they generated the TransUnion Consumer Credit Scores using a substantially different (and greatly inferior) credit scoring system than United States lenders routinely use in connection with lending decisions.

6.      Defendants knew that the majority of reasonable consumers do not realize that multiple credit scoring systems exist.

## THE PARTIES

### Plaintiff Gary W. Sgouros

7.      Plaintiff Gary W. Sgouros is a resident of Eureka, Missouri, and he has no intention of changing his residence.

8.      On or about June 10, 2013, in exchange for $39.90 that Mr. Sgouros paid TransUnion, TransUnion provided Mr. Sgouros a TransUnion Consumer Credit Score.

9.      The TransUnion Consumer Credit Score report also included a credit score from Experian and a credit score from Equifax.  Plaintiff believes TransUnion Interactive, Inc., assembled and included the credit scores from Experian and Equifax with the TransUnion Consumer Credit Score report, with the assistance of TransUnion Corp. and Trans Union LLC.

10.      On or about June 10, 2013, Mr. Sgouros learned from a lender that the information that TransUnion had provided to Mr. Sgouros was inaccurate, in that the credit score for Mr. Sgouros provided to the lender (a car dealership) was more than 100 points lower than the report that TransUnion sold to Mr. Sgouros.

11.      Mr. Sgouros called TransUnion and complained that the TransUnion Consumer Credit Scores he purchased did not align with the TransUnion credit scores his lenders used.

12.      Defendants injured Mr. Sgouros in violation of the FCRA by providing him TransUnion Credit Scores that were not "derived from a credit scoring model that is widely distributed to [lenders] by [TransUnion] in connection with residential real property loans" and that did not "assist[] [Mr. Sgouros] in understanding the credit scoring assessment of [his] credit behavior . . . and predictions about [his] future credit behavior . . . ."[1]

13.      Defendants also injured Mr. Sgouros in violation of the FCRA by providing him

---

[1] 15 U.S.C. § 1681g(f)(7)(A).

TransUnion Consumer Credit Scores that were inaccurate because they were materially misleading.[2]  Even if the TransUnion Consumer Credit Scores technically *were* "credit scores" under the FCRA,[3] the TransUnion Consumer Credit Scores were materially misleading because they failed to prominently and clearly disclose to Mr. Sgouros that they were not generated using the same credit scoring system routinely used by United States lenders when making lending decisions.

14.     Furthermore, the TransUnion Consumer Credit Scores contained misleading information about Mr. Sgouros, in violation of the FCRA, because they did not contain his credit score as used by United States lenders, but instead contained another number (concerning Mr. Sgouros) that was 100 points different from the credit score used by United States lenders—a number that was useless to Mr. Sgouros.

15.     Furthermore, Defendants injured Mr. Sgouros in violation of state consumer protection laws by concealing material characteristics of the TransUnion Consumer Credit Scores from him in connection with TransUnion's marketing and sale of the TransUnion Consumer Credit Scores to Mr. Sgouros.

16.     Like most consumers, Mr. Sgouros believed the credit scoring system used to generate the TransUnion Consumer Credit Scores he purchased was the same as the credit scoring system that lenders routinely use in connection with evaluating creditworthiness.  In truth, it was not.

17.     Unfortunately for Mr. Sgouros, the credit score that TransUnion sold to him is not based on an accurate or otherwise standard credit scoring system used in the vast majority of

_____

[2] 15 U.S.C. § 1681e(b).

[3] 15 U.S.C. § 1681g(f)(2)(A).

lending decisions in the United States.  Consequently, the credit score sold to Mr. Sgouros by TransUnion was essentially worthless to Mr. Sgouros.

18.     Had Mr. Sgouros known about the significant differences between the TransUnion Consumer Credit Scores he purchased and the credit score lenders routinely use, he would not have paid money to TransUnion for the TransUnion Consumer Credit Scores.

19.     Moreover, Mr. Sgouros relied upon the inaccurate TransUnion Consumer Credit Scores he purchased in deciding to seek extensions of credit, which his potential lenders ultimately denied him because the credit scores his potential lenders used were much lower than the inaccurate TransUnion Credit Score Mr. Sgouros purchased.

**Defendant TransUnion Corp.**

20.     Defendant TransUnion Corp. incorporated in the State of Delaware on December 2, 2004.

21.     TransUnion Corp.'s corporate headquarters are located at 555 West Adams Street, Chicago, Illinois 60661.

22.     TransUnion Corp. stated the following in its Annual Report (Form 10-K) for the fiscal year ended December 31, 2013:

> Our U.S. operations are subject to numerous laws that regulate privacy, data security and the use of consumer credit or an individual's healthcare information.  . . .  The laws and regulations that affect our U.S. business include, but are not limited to, the following:
>
> > FCRA—The United States Fair Credit Reporting Act ("FCRA") applies to consumer credit reporting agencies, ***including us***, as well as data furnishers and users of consumer reports.  The FCRA promotes the accuracy, fairness and privacy of information in the files of consumer reporting agencies that engage in the practice of assembling or evaluating information relating to consumers for certain specified purposes.  The FCRA limits what information

> may be reported by consumer reporting agencies, limits the distribution and use of consumer reports, establishes consumer rights to access and dispute their own credit files, requires consumer reporting agencies to make available to consumers a free annual credit report and imposes many other requirements on consumer reporting agencies, data furnishers and users of consumer report information. Violation of the FCRA can result in civil and criminal penalties. . . .

TransUnion Holding Company, Inc., TransUnion Corp., Annual Report (Form 10-K), at 14 (Feb. 27, 2014), *available at* http://www.sec.gov/Archives/edgar/data/1513514/000155203314000018/ transunion-20131231x10k.htm (emphasis added).

    23.    TransUnion Corp.'s most recent Annual Report also provides the following with respect to an "operating segment" of TransUnion Corp. called "Interactive":

### Interactive

> Interactive offers services that help consumers manage their personal finances and protect against identity theft. Services in this segment include credit reports, credit scores, credit monitoring services and fraud management services. Our Interactive segment provides services through both direct and indirect channels.

> *Direct*—We offer services directly to consumers, primarily on a subscription basis through our website, www.transunion.com, to help consumers manage their personal finances and protect them against identity theft. These services include: credit reports, credit scores and analysis, identity risk score and alerts, alerts to changes in credit reports and scores, debt analysis, scores specific to the insurance industry and the ability to restrict third-party access to a consumer's credit report. We complement these features with personalized content that explains how credit and financial data is used in various industries to evaluate consumers and how a consumer's financial choices impact this evaluation. Our objective is to acquire and retain quality customers in an efficient manner. We acquire customers primarily through performance-based, data-driven advertising channels, including paid search and online display, where we can precisely measure the return on our advertising spend. We continually enhance our content and add new features to increase the value of our services to our customers. Approximately 61% of Interactive revenue came from our direct

Amended Class Action Complaint
*Sgouros et al. v. TransUnion Corp. et al.*, No. 1:14-cv-01850

channel in 2013.

> *Indirect*—We offer our services wholesale to strategic partners who combine them with their own offerings and sell them to consumers and businesses in such areas as financial services, commercial insurance and online membership clubs. Through these partnerships we are able to test new content and product features with minimal investment. Approximately 39% of Interactive revenue came from our indirect channel in 2013.

TransUnion Holding Company, Inc., TransUnion Corp., Annual Report (Form 10-K), at 4, 11.

24. Plaintiff believes "Interactive" above refers to Defendant TransUnion Interactive, Inc. Thus, Plaintiff believes TransUnion Corp., Trans Union LLC (see below), and TransUnion Interactive, Inc. provide credit information and credit scores both to consumers ("direct") and to third party "strategic partners" ("indirect").

**Defendant Trans Union LLC**

25. Defendant Trans Union LLC is a limited liability corporation organized under the laws of the State of Delaware.

26. Trans Union LLC's headquarters are located at 555 West Adams Street, Chicago, Illinois 60661.

27. The website transunion.com includes a Terms of Use, accessible by clicking a link titled "Terms of Use" at the bottom of the page, that states, *inter alia*, that "[t]hese Terms of Use apply to the web sites of Trans Union LLC and its domestic subsidiaries ('TransUnion')." TransUnion - Terms of Use, http://www.transunion.com/corporate/termsOfUse.page (last visited July 28, 2014). Thus, Trans Union LLC, along with the other Defendants, is responsible for the content and services provided on transunion.com.

28. The abovementioned Terms of Use do not include an arbitration provision or a class action waiver. *Id.*

29.     The abovementioned Terms of Use state as follows:

> **Applicable Law**
> The materials in this web site are designed for use by residents of the United Sates [sic] and its territories and possessions. The laws applicable to the interpretation of these terms and conditions shall be the laws of the State of Illinois. You agree that any and all disputes arising under this Agreement or out of TransUnion's provision of services to you, if submitted to a court of law, shall be submitted to the state and federal courts of Cook County, Illinois, USA.

*Id.*

### Defendant TransUnion Interactive, Inc.

30.     Defendant TransUnion Interactive, Inc., is a corporation organized under the laws of the State of Delaware on April 26, 2000.

31.     TransUnion Interactive, Inc. has an office at 100 Cross Street, Suite 202, San Luis Obispo, California 93401.

32.     TransUnion Interactive, Inc. is the consumer subsidiary of TransUnion.

33.     TransUnion Interactive, Inc. also offers products to third-party businesses. According to TransUnion's website, transunion.com, through the TransUnion Interactive Partnership Program, "TransUnion Interactive can help businesses better acquire customers, strengthen long-term customer value and increase their bottom line." TransUnion Interactive, http://www.transunion.com/corporate/about-transunion/who-we-are/transunion-interactive.page (last visited July 28, 2014).

34.     Defendants refer to the partnership program referenced in the preceding paragraph interchangeably as the "TransUnion Interactive Partnership Program" and the "TransUnion Partnership Program." *Id.*; TransUnion Interactive Partnership Program, http://www.transunion.com/corporate/business/solutionsbyneed/consumer-direct-services.page

Amended Class Action Complaint
*Sgouros et al. v. TransUnion Corp. et al.*, No. 1:14-cv-01850

(July 28, 2014) (referring to the program as the "TransUnion Partnership Program"); TransUnion - Partnership Program, http://www.partnershipprogram.transunion.com/ (last visited July 28, 2014) (same).

35.     TransUnion states that the "TransUnion Partnership Program" (also called the "TransUnion Interactive Partnership Program") "empower[s] industry-leading, consumer-serving companies to deliver valuable financial information in ways their customers want to receive it." TransUnion Interactive Partnership Program, http://www.transunion.com/corporate/business/solutionsbyneed/consumer-direct-services.page.

36.     TransUnion represents the following with respect to the "TransUnion Partnership Program":

> Need a white-label solution to show customers their credit information within your site?
>
> Our **CreditView^SM Dashboard** is your fully branded credit center. With this elegant, seamlessly integrated solution, your customers will see the big-picture credit information they're seeking - in one, convenient place. As they check their ***TransUnion credit score***, review the factors that contribute to it, see their credit alerts & more, your customers don't have to know we're behind it. They'll stay fully engaged with your brand.

TransUnion Partnership Program, http://www.partnershipprogram.transunion.com/index.html (scroll down and click "Need a white-label solution to show customers their credit information within your site?") (emphasis added).

37.     Thus, Plaintiff believes TransUnion Interactive, Inc., provides TransUnion Consumer Credit Scores both to consumers and to third-party business.

## JURISDICTION AND VENUE

38.     This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: TransUnion's headquarters are in Illinois. As a result, TransUnion has

continuous and systematic ties with Illinois such that TransUnion is "essentially at home" here, meaning the Court has general *in personam* jurisdiction over TransUnion.

39.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that there are at least 100 members in the proposed plaintiff class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

40.     This Court also has original subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, namely, the FCRA.

41.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).  A substantial part of the events or omissions giving rise to Plaintiff's claims, including Defendants' dissemination of credit scores that violate the FCRA and that mislead consumers, such as Mr. Sgouros, occurred within this District.

## CLASS ALLEGATIONS

42.     Plaintiff brings his First Cause of Action and his Second Cause of Action, *see infra*, to redress alternative violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* One alternative is based on willful violations of the FCRA.  The other alternative is based on negligent violations of the FCRA.  It shall be up to the factfinder to determine whether Defendants' violations of the FCRA are willful or negligent, based upon the facts presented at

trial.  Collectively, this Complaint refers to the classes identified below in this paragraph as the "FCRA Class" or the "FCRA Classes."

a.    Willful Violations.  Plaintiff brings his First and Second Causes of Action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States who at any time during the period from March 14, 2012, to the present were the subject of a consumer report TransUnion issued that contained a TransUnion Consumer Credit Score and who either:
>
> (i)    as a result of TransUnion's willful violation of 15 U.S.C. §§ 1681g(f)(7)(A) and/or 1681e(b), elects, after proper notice, to accept statutory and punitive damages as authorized under 15 U.S.C. § 1681n ("FCRA Willful Violations Class A"), or
>
> (ii)    as a result of TransUnion's willful violation of 15 U.S.C. §§ 1681g(f)(7)(A) and/or 1681e(b), elects, after proper notice, to prove at a separate proceeding, actual damages and punitive damages ("FCRA Willful Violations Class B").

b.    Negligent Violations.   In the alternative, Plaintiff brings his First and Second Causes of Action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States who at any time during the period from March 14, 2012, to the present were the subject of a consumer report TransUnion issued that contained a TransUnion Consumer Credit Score and who, as a result of TransUnion's negligent violation of 15 U.S.C. §§ 1681g(f)(7)(A) and/or 1681e(b) may show at a separate proceeding their actual damages ("FCRA Negligent Violations Class").

43.    Excluded from the FCRA Classes are officers and directors of Defendants; members of the immediate families of the officers and directors of Defendants; their legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a

controlling interest.

44.     In addition, Plaintiff brings this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of the following class and sub-class (the "Consumer

Protection Class"):

> All persons in the United States who purchased TransUnion
> Consumer Credit Scores from Defendants during the Consumer
> class period of March 14, 2011, to the present.

45.     Plaintiff also brings this action on behalf of the following subclass (the "Missouri

Subclass"):

> All persons in the state of Missouri who purchased TransUnion
> Consumer Credit Scores from Defendants during the class period
> March 14, 2009, to the present.

46.     Excluded from the Consumer Protection Class and the Missouri Subclass are

officers and directors of Defendants; members of the immediate families of the officers and

directors of Defendants; their legal representatives, heirs, successors, or assigns; and any entity

in which they have or have had a controlling interest.

47.     Collectively, this Complaint refers to the FCRA Classes, the Consumer Protection

Class, and the Missouri Subclass as the "Class" or "Classes."

**Numerosity**

48.     At this time, Plaintiff does not know the exact number of members of the Class;

however, given the nature of the claims and Defendants' widespread sale of TransUnion

Consumer Credit Scores to consumers, Plaintiff believes that members of the Classes are so

numerous that joinder of them is impracticable.

**Commonality**

49.     There is a well-defined community of interest in the questions of law and fact

involved in this case. Questions of law and fact common to the Class members that predominate over questions that may affect individual Class members include:

a. whether the TransUnion Consumer Credit Scores Defendants sold the Class members violated § 1681g(f)(7)(A) of the FCRA;

b. whether the TransUnion Consumer Credit Scores Defendants sold the Class members violated § 1681e(b) of the FCRA;

c. whether Defendants concealed material information concerning the TransUnion Consumer Credit Scores they sold consumers; and

d. whether Defendants injured Plaintiff and the Class members as a result of their deceptive and misleading advertising and business practices.

**Typicality**

50.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendants' TransUnion Consumer Credit Scores in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

**Adequacy**

51.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class members.

**Injunctive Relief**

52.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

**Monetary Relief**

53.     The prerequisites to maintaining a class action for monetary relief pursuant to Federal Rule of Civil Procedure 23(b)(3) are met, as the questions of law or fact common to Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent ruling and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class even though certain members of the Class are not parties to such actions.

54.     Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*)**
**(Violation of 15 U.S.C. § 1681g(f)(7)(A))**
**(On Behalf of the FCRA Classes)**

55.     Plaintiff realleges and incorporates the above paragraphs of this Amended Complaint as if set forth herein.

56.     Plaintiff brings this claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, on behalf of the FCRA Classes, for violation of 15 U.S.C. § 1681g(f)(7)(A).

57.     Plaintiff's First Cause of Action is based on the content of the TransUnion Consumer Credit Score reports themselves, not the content of www.transunion.com insofar as it

is not included within the TransUnion Consumer Credit Score reports.

58.     Plaintiff is a "consumer" under the FCRA because Plaintiff is an individual.  15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.").

59.     The FCRA applies to TransUnion Corp., Trans Union LLC, and TransUnion Interactive, Inc. because each of these entities is a "person" under the FCRA, each of these entities is a "consumer reporting agency" under the FCRA, and the credit reports of each of these entities are "consumer reports" under the FCRA.  15 U.S.C. § 1681a(b), (d)(1), (f).

60.     Under the FCRA, a "person" is an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).

61.     TransUnion Corp. is a "person" under the FCRA because it is a corporation.  15 U.S.C. § 1681a(b); *see* Parties, *supra*.

62.     Trans Union LLC is a "person" under the FCRA because it is an "other entity" (*i.e.*, a limited liability company).  15 U.S.C. § 1681a(b); *see* Parties, *supra*.

63.     TransUnion Interactive, Inc., is a "person" under the FCRA because it is a corporation.  15 U.S.C. § 1681a(b); *see* Parties, *supra*.

64.     Under the FCRA, the term "consumer reporting agency" means "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

65.     TransUnion Corp. is a "consumer reporting agency" under the FCRA because it is

a person which, for monetary fees, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

66.     TransUnion Corp. has admitted in a recent public filing that it is a "consumer reporting agency" and that the FCRA applies to it. *See* Parties, *supra*, at ¶ 22.

67.     Further, Plaintiff believes TransUnion Corp., through its "Interactive" operating segment, TransUnion provides TransUnion Consumer Credit Scores both to consumers, such as Mr. Sgouros, and to third-party businesses.

68.     Trans Union LLC is a "consumer reporting agency" under the FCRA because it is a person which, for monetary fees, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

69.     As set forth above, according to the transunion.com Terms of Use, Trans Union LLC is responsible for transunion.com, which is the website where Mr. Sgouros bought his TransUnion Consumer Credit Score. Mr. Sgouros navigated to transunion.com to purchase the score.

70.     Plaintiff believes Trans Union LLC assists TransUnion Corp. and TransUnion Interactive, Inc. in providing the TransUnion Consumer Credit Scores both to consumers and to third party businesses.

71.     TransUnion Interactive, Inc. is a "consumer reporting agency" under the FCRA because it is a person which, for monetary fees, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

72.     As set forth above, TransUnion Interactive, Inc., assembles consumer credit information into consumer reports and provides the reports both to consumers, such as Mr. Sgouros, and to third-party business for monetary fees.  *See* Parties, *supra* (discussing, *inter alia*, "TransUnion Partnership Program," also known as "TransUnion Interactive Partnership Program").

73.     Under the FCRA, the term "credit score":

(i) means a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default (and the numerical value or the categorization derived from such analysis may also be referred to as a "risk predictor" or "risk score"); and

(ii) does not include--

(I) any mortgage score or rating of an automated underwriting system that considers one or more factors in addition to credit information, including the loan to value ratio, the amount of down payment, or the financial assets of a consumer; or

(II) any other elements of the underwriting process or underwriting decision.

15 U.S.C.A. § 1681g(f)(2)(A).

74.     The TransUnion Consumer Credit Scores are "credit scores" as the FCRA defines

that term in 15 U.S.C. § 1681g(f)(2)(A).

75.     When a consumer reporting agency communicates a credit score to consumers or others, the credit score is a "consumer report" as the FCRA defines that term in 15 U.S.C. § 1681a(d)(1), since the credit score is a "written . . . communication of . . . information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit . . . to be used primarily for personal, family, or household purposes . . . ."

76.     The TransUnion Consumer Credit Scores are "consumer reports" as the FCRA defines that term in 15 U.S.C. § 1681a(d)(1).

77.     Under 15 U.S.C. § 1681g(f)(7)(A), a credit reporting agency that provides a credit score to a consumer must:

> supply the consumer with a credit score that is derived from a credit scoring model that is widely distributed to users by that consumer reporting agency in connection with residential real property loans or with a credit score that assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer[.]

78.     The TransUnion Consumer Credit Scores are not "derived from a credit scoring model that is widely distributed to [lenders] by [TransUnion] in connection with residential real property loans".

79.     Nor are the TransUnion Consumer Credit Scores credit scores that "assist[] the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer" because the TransUnion

Consumer Credit Scores do not correspond to the credit scores lenders use in over 90% of United States lending decisions in a substantial number of cases.

80.     Thus, when TransUnion provided the TransUnion Consumer Credit Scores to Plaintiff and the FCRA Class members, TransUnion willfully or negligently failed to comply with § 1681g(f)(7)(A) of the FCRA.

81.     TransUnion's liability to Plaintiff and the FCRA Class members arose from the same unlawful policies, practices, or procedures.

82.     TransUnion's violations of § 1681g(f)(7)(A) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

83.     In the alternative, TransUnion's violations of § 1681g(f)(7)(A) were negligent in that it had affirmative statutory duties to provide credit scores that complied with § 1681g(f)(7)(A), but failed to comply with this statutory duty.

84.     If TransUnion willfully violated § 1681g(f)(7)(A), Plaintiff and the Class are entitled to damages, as specified in § 1681n.

85.     In the alternative, if TransUnion negligently violated § 1681g(f)(7)(A), Plaintiff and the Class are entitled to damages at a separate proceeding, as specified in § 1681o.

86.     Therefore, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**(Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*)**
**(Violation of 15 U.S.C. § 1681e(b))**
**(On Behalf of the FCRA Classes)**

87.     Plaintiff realleges and incorporates the above paragraphs of this Amended Complaint as if set forth herein.

88.     Plaintiff brings this claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681

*et seq.*, on behalf of the FCRA Classes, for violation of 15 U.S.C. § 1681e(b).

89.     Plaintiff's Second Cause of Action is based on the content of the TransUnion Consumer Credit Score reports themselves, not the content of www.transunion.com insofar as it is not included within the TransUnion Consumer Credit Score reports.

90.     As set forth in Plaintiff's First Cause of Action, *supra*, Plaintiff is a "consumer" under the FCRA, and the FCRA applies to each Defendant because each Defendant is a "person" and a "consumer reporting agency" under the FCRA.  Further, the TransUnion Consumer Credit Scores are "credit scores" and "consumer reports" under the FCRA.

91.     Under 15 U.S.C. § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

92.     Consumer reports are inaccurate for purposes of § 1681e(b) not only when they are facially false, but also when they are technically accurate yet nonetheless misleading.

93.     With respect to Plaintiff and FCRA Class members, TransUnion has willfully or negligently violated § 1681e(b) of the FCRA by providing inaccurate, misleading TransUnion Consumer Credit Score reports, since the scores did not prominently and clearly disclose that they were not generated using the credit scoring system lenders routinely use, as described herein.

94.     Further, TransUnion did not follow "reasonable procedures to assure maximum possible accuracy" of the TransUnion Consumer Credit Score reports because TransUnion failed to prominently and clearly disclose that the TransUnion Consumer Credit Scores were not generated using the same credit scoring system lenders routinely use.[4]

---

[4] By failing to prominently and clearly make such disclosure, TransUnion failed to fulfill the

95.     Thus, when TransUnion provided the TransUnion Consumer Credit Scores to Plaintiff and the FCRA Class members, TransUnion failed to comply with § 1681e(b) of the FCRA.

96.     TransUnion's liability to Plaintiff and the FCRA Class members arose from the same unlawful policies, practices, or procedures.

97.     TransUnion's violations of § 1681e(b) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

98.     In the alternative, TransUnion's violations of § 1681e(b) were negligent in that it had an affirmative statutory duty to employ reasonable procedures to ensure maximum possible accuracy of information in the consumer reports in question, but failed to comply with this statutory duty.

99.     If TransUnion willfully violated § 1681e(b), Plaintiff and the Class are entitled to damages, as specified in § 1681n.

100.     In the alternative, if TransUnion negligently violated § 1681e(b), Plaintiff and the Class are entitled to damages at a separate proceeding, as specified in § 1681o.

101.     Therefore, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1 *et seq.*)**
**(On Behalf of the Consumer Protection Class)**

102.     Plaintiff realleges and incorporates the above paragraphs of this Amended

---

purpose of, or to comply with the spirit of, the notification requirement in 15 U.S.C. § 1681g(f)(1) ("Upon the request of a consumer for a credit score, a consumer reporting agency shall supply to the consumer a statement indicating that the information and credit scoring model may be different than the credit score that may be used by the lender[.]").

Complaint as if set forth herein.

103.     Plaintiff brings this claim on behalf of himself and on behalf of the Consumer

Protection Class for violation of the Illinois Consumer Fraud and Deceptive Business Practices

Act, 815 ILCS 505/1 *et seq.* (the "ICFA").

104.     At all times relevant hereto, Section 2 of the ICFA was in full force and effect,

which provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use of or employment of
> any deceptive, fraud, false pretense, false promise,
> misrepresentation or the concealment, suppression or omission of
> any material fact, with intent that others rely upon the
> concealment, suppression or omission of such material fact, or the
> use of employment of any practice described in Section 2 of the
> "Uniform Deceptive Trade Practices Act," approved August 5,
> 1965, in the conduct of  any trade or commerce are hereby
> declared unlawful whether any person has in fact been misled,
> deceived or damaged thereby.   In construing this section
> consideration shall be given to the interpretations of the Federal
> Trade Commission and the federal courts relating to Section 5(a)
> of the Federal Trade Commission Act.

815 ILCS 505/1 (footnotes omitted).

105.     Plaintiff and the Consumer Protection Class have standing to assert this claim

because they are consumers within the meaning of the ICFA and Defendants' practices were

addressed to the market generally and otherwise implicate consumer protection concerns.  At all

relevant times, Defendants conducted "trade and commerce" within the meaning of 815

ILCS 505/1(f).

106.    Defendants have committed unfair and/or deceptive acts by engaging in the acts

and practices alleged herein.

107.    Defendants intended that Plaintiff and the Consumer Protection Class rely on the

unfair and deceptive acts and omissions alleged herein.

108.    Defendants' actions, which were willful and wanton, constitute intentional violations of the ICFA.

109.    Defendants' unlawful, unfair and/or deceptive practices described herein are continuing in nature and are widespread practices.  Plaintiff and the Consumer Protection Class have been damaged as a proximate result of Defendants' course of conduct and violations of the ICFA.  In particular, Plaintiff and the Consumer Protection Class members bought the TransUnion Consumer Credit Scores, expecting that they were the same credit scores used by lenders (when, in fact, they were not).  As a result, the credit scores were essentially worthless to consumers.

### FOURTH CAUSE OF ACTION
**(Violation of Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*)**
**(On behalf of the Missouri Subclass)**

110.    Plaintiff realleges and incorporates the above paragraphs of this Amended Complaint as if set forth herein.

111.    Plaintiff brings this claim under the Missouri Merchandizing Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, on behalf of the Missouri Subclass.

112.    At all relevant times, section 407.020 of the MMPA was in full force and effect, and provided, in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

113.    "Trade or commerce" is defined in Mo. Rev. Stat. § 407.010 as:

> The advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article,

commodity, or thing of value wherever situated.  The terms "trade" and "commerce" include any trade of commerce directly or indirectly affecting the people of this state.

114.    As set forth herein, Defendants' acts, practices, and conduct violate section 407.020 in that, among other things, Defendants have used and/or continue to use deception, misrepresentation, unfair practices, concealment, suppression, and/or omission of material facts in connection with the advertising, marketing, offering, and sales of TransUnion Consumer Credit Scores.

115.    Plaintiff and the members of the Missouri Subclass seek actual damages; a declaration that Defendants' methods, acts, and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq*; an injunction prohibiting Defendants from continuing to engage in such unlawful methods, acts, and practices; restitution, rescission, pre- and post-judgment interest, punitive damages, attorney's fees and costs, and any other relief that the Court deems necessary or proper.

116.    Therefore, Plaintiff prays for relief as set forth below.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Classes as follows:

A.    An Order certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3);

B.    An Order declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.    An Order declaring that Defendants have committed the violations of law alleged herein;

D.     An Order providing for any and all injunctive relief the Court deems appropriate;

E.     An Order awarding statutory damages in the maximum amount provided by law;

F.     An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury, with respect to the common law claims alleged;

G.     An Order awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

H.     An Order establishing Defendants as constructive trustees of the profits that served to unjustly enrich Defendants, together with interest during the period in which Defendants retained such funds;

I.     An Order providing for restitution and disgorgement to Plaintiff and the Class members;

J.     An Order awarding interest at the maximum allowable legal rate on the forgoing sums;

K.     An Order awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees; and

L.     Such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated:  July 28, 2014

Respectfully submitted,

**REESE RICHMAN LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Christopher B. Sanchez
*csanchez@caffertyclobes.com*
30 North LaSalle Street
Suite 3200
Chicago, Illinois  60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Counsel for Plaintiff and the Proposed Class*

Amended Class Action Complaint
*Sgouros et al. v. TransUnion Corp. et al.*, No. 1:14-cv-01850