UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY W. SGOUROS, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANSUNION CORP.; TRANS UNION LLC; and TRANSUNION INTERACTIVE, INC., <br><br> Defendants. | No. 14 C 1850 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants TransUnion Corp., Trans Union LLC, and TransUnion Interactive, Inc.'s Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Gary W. Sgouros (Sgouros) is a Missouri resident who, on or about June 10, 2013, bought a TransUnion Consumer Credit Score for $39.90. Sgouros has sued three separate entities. The first is TransUnion Corp. (TU Corp.), a Delaware limited liability holding company that is headquartered in Illinois and owns Trans Union LLC. The second is Trans Union LLC, another Delaware limited liability company headquartered in Illinois. The third is TransUnion Interactive, Inc. (TUI), a Delaware corporation that is headquartered in California. Together the three entities shall be referred to as Defendants or TransUnion.

The same day that he made the aforementioned purchase, Sgouros learned from a car dealership lender that the credit score that lender was provided was more than 100 points lower than the number contained in the TransUnion Consumer Credit Score that Sgouros had

1

purchased. The car dealership lender refused to extend Sgouros his desired auto loan based on the lower score. Plaintiff alleges that the mismatch between scores was due to TransUnion's practice of using an inferior credit score calculation, "VantageScore," to produce the TransUnion Consumer Credit Scores sold to consumers such as Sgouros. VantageScore is different from the "FICO" calculation used by the vast majority of American lenders. Plaintiff alleges that Defendants take advantage of widespread consumer ignorance of the divergent scoring systems, selling consumers credit score products that do not meet their needs. Plaintiff claims that had he known that the score he purchased from Defendants would not correspond to that obtained by the car dealer, he would not have purchased the TransUnion Consumer Credit Score.

Sgouros asserts four distinct causes of action, alleging that Defendants injured him in violation of the Fair Credit Reporting Act (FCRA) and state consumer protection laws of both Illinois and Missouri. On July 7, 2014, Defendants moved to dismiss Plaintiff's Class Action Complaint for failure to state a claim. Plaintiff responded by filing an Amended Class Action Complaint. Defendants again move for dismissal, claiming that the Amended Class Action Complaint still fails to state a claim.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In addition to the complaint, a court may also consider documents attached to or referenced in the complaint.

*Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1249 (7th Cir.1994)). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007).

### III. DISCUSSION

#### A. Count I

Count I alleges either a willful or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g(f)(7)(A). That section of the statute provides that a credit reporting agency that provides credit scores to consumers must:

> supply the consumer with a credit score that is derived from a credit scoring model that is widely distributed to users by that consumer reporting agency in connection with residential real property loans or with a credit score that assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer[.]

15 U.S.C. § 1681g(f)(7)(A). Sgouros alleges that Defendants violated the statute by selling him a TransUnion Credit Score that was not "derived from a credit scoring model that is widely distributed to [lenders] by [TransUnion] in connection with residential real property loans" and that did not "assist[] [Sgouros] in understanding the credit scoring assessment of [his] credit behavior…and predictions about [his] future credit behavior." Plaintiff's Amended Complaint ¶ 9.

Plaintiff's claims against all three Defendant entities are based on his assertion that each is a "consumer reporting agency" under the FCRA. For the purposes of the FCRA, a consumer reporting agency is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating

3

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). Defendants are each either corporations or other entities (an LLC) and therefore qualify as persons under the FCRA. 15 U.S.C. § 1681a(b).

First, Defendants argue that Count I should be dismissed with regard to Defendants TU Corp. and Trans Union LLC because Plaintiff's complaint does not allege that those entities are subject to FCRA duties. Defendants argue that Plaintiff's complaint claims that he purchased his credit score from TUI only, not the two other entities. According to Defendants, because Plaintiff has not claimed that TU Corp. or Trans Union LLC supplied his credit score, he has not claimed that the FCRA applies to those entities. To that end, Defendants argue that Plaintiff has not pled sufficient facts alleging how the three separate entities worked together, or which separate acts each Defendant committed to violate the statute.[1]

On its face, the complaint alleges that TUI assembled the TransUnion Consumer Credit Score report, including credit scores from both Experian and Equifax, with the assistance of TU Corp. and Trans Union LLC. Sgouros asserts that TUI is the consumer subsidiary of "TransUnion." He also points to a TU Corp. Annual Report from 2013 in which the entity refers to itself as a "consumer credit agency" and discusses its "Interactive segment" which helps consumers manage their personal finances and protect against identity theft by providing credit reports and credit scores among other services. Sgouros also alleges that Trans Union LLC, along with the other Defendants, is responsible for the content and services of transunion.com

---

[1] Defendants also argue that this Court already found that Plaintiff purchased his credit from TUI and no other entities, citing a phrase in this Court's February 2, 2015 Opinion stating that "Plaintiff purchased a TransUnion Consumer Credit Score . . . on Defendant's TransUnion Interactive's website." But Defendants misunderstand that phrase. It did not decide either way whether TU Corp. and Trans Union LLC were otherwise involved in the credit score operations, but simply acknowledged that the website belonged to TUI.

4

based on the website's "Terms of Use," which state that they apply to the websites of Trans Union LLC and its domestic subsidiaries. Sgouros alleges the website collectively refers to Trans Union LLC and its domestic subsidiaries as "TransUnion," without distinguishing between them. Plaintiff adopts this convention intermittently throughout his complaint.

At this juncture, I find that Plaintiff has satisfied his pleading burden of asserting a plausible claim that TU Corp. and Trans Union LLC are consumer reporting agencies that "regularly engage[] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in conjunction with TUI. 15 U.S.C. § 1681a(f); see also *Tompkins v. Lasalle Bank Corp.*, No. 09 C 3906, 2009 WL 4349532, at *3 (N.D. Ill. Nov. 24, 2009 (citing *Centers v. Centennial Mortg., Inc.*, 398 F. 3d 930, 933 (7th Cir. 2005) ("[w]hen ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint")). Taking all facts in the light most favorable to the plaintiff, it is conceivable that the three entities collectively form a consumer reporting agency subject to the FCRA. If discovery reveals that TU Corp. and Trans Union LLC played no part in assembling and evaluating the information that went into Sgouros' TransUnion Consumer Credit Score, they may be dismissed as Defendants at that time. See *Miller v. Trans Union, LLC*, No. 15-3240, 2016 WL 1055869 (6th Cir. 2016) (affirming grant of summary judgment based on District Court's finding that TransUnion Interactive was not a consumer reporting agency).

Next, Defendants argue that Count I should be dismissed because Plaintiff has not pled facts required to establish that the credit score he bought from TUI was subject to § 1681g(f). Defendants argue that § 1681g(f)(4) exempts entities like TUI from the requirements of § 1681g(f)(7)(A).

5

§ 1681g(f)(4) provides that § 1681g(f) "shall not be construed so as to compel a consumer reporting agency to develop or disclose a score if the agency does not— (A) distribute scores that are used in connection with residential real property loans; or (B) develop scores that assist credit providers in understanding the general credit behavior of a consumer and predicting the future credit behavior of the consumer." 15 U.S.C. § 1681g(f)(4). Accordingly, Defendants argue that § 1681g(f)(4) exempts TUI from being compelled to develop or disclose credit scores to consumers upon request because TUI does not distribute scores to lenders. However, Plaintiff argues that TransUnion has publicly admitted in filings with the SEC that "we contract with nine of the ten largest banks, [and] all of the major credit card issuers . . . [Our USIS operating segment] provides . . . credit scores . . . to businesses in the United States." TransUnion Holding Company, Inc. & TransUnion Corp., Annual Report (Form 10-K), at 4, 9 (Feb. 27, 2014), *available at* https://www.sec.gov/Archives/edgar/data/1513514/000155203314000018/transunion-20131231x10k.htm. Thus, Plaintiffs say the entity that they allege comprises all three Defendants has admitted to distributing scores to credit providers, disqualifying them from the § 1681g(f)(4) exemption.

As discussed earlier, Plaintiff has sufficiently alleged Defendants TU Corp. and Trans Union LLC's involvement in assembling the TransUnion Credit Score that Sgouros bought. It follows that Plaintiff may still prove that the three Defendants acted as one consumer reporting agency, both consumer and lender facing, in which case the § 1681g(f)(4) exemption would clearly not apply. However, if fact discovery belies Plaintiff's allegation that Defendants essentially acted as a joint consumer reporting agency, Defendants may then revisit this argument. At this time, however, I deny Defendants' Motion to Dismiss Count I.

6

## B. Count II

In Count II Plaintiff alleges a violation of the FCRA, 15 U.S.C. § 1681(e)(b), which requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Plaintiff, citing no authority, argues that consumer reports are inaccurate for the purposes of §1681e(b) both when they are facially false and when they are technically accurate yet still misleading. Plaintiff argues that the TransUnion Consumer Credit Score he bought was both inaccurate and misleading because the product did not clearly disclose that it was generated using a different system than the one normally used to calculate the score that lenders receive.

First, advancing the same argument as used in Count I, Defendants argue that Count II should be dismissed as to TU Corp. and Trans Union LLC because Plaintiff's complaint does not allege that those entities are consumer reporting agencies that sold Plaintiff the credit score. For the same reasons discussed above in the context of Count I, this argument fails at this juncture.

However, Defendants claim that Count II should be dismissed against all Defendants for two additional reasons. First, they argue that the Section 1681(e)(b) claim fails because the credit score that Sgouros received was not a "consumer report." Under the FCRA, a consumer report is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for," personal credit or insurance purposes, employment purposes, and other purposes. 15 U.S.C. § 1681a(d)(1). The Seventh Circuit has held that "There is no

7

consumer report unless there is a 'communication ... for the purpose of serving as a factor in establishing the consumer's eligibility for' credit or other statutorily enumerated purposes, i.e., there cannot be a consumer report without disclosure to a third party." *Wantz v. Experian Information Solutions*, 386 F.3d 829 (7th Cir. 2004) (*abrogated on other grounds*, *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56 n. 8 (2007) (citing *Renninger v. ChexSystems,* No. 98 C 669, 1998 WL 295497, at *4–5 (N.D. Ill. May 22, 1998) (internal citations omitted))). Therefore even assuming *arguendo* that Sgouros could establish that the number he received in his TransUnion Consumer Credit Score was prepared without abiding by "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," Sgouros would not have a viable cause of action under § 1681(e)(b) because he was the only recipient of the TransUnion Consumer Credit Score. Because no third party ever received that score, it is not considered a "consumer report" by the Seventh Circuit and therefore does not trigger the protections of § 1681(e)(b). Therefore Count II is dismissed against all Defendants, and there is no need to consider Defendants' second argument.

### C. Count III

Count III alleges that Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), in particular Section 2, which provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to

8

Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/1 (footnotes omitted). Plaintiff claims that Defendants' practices constituted unfair and/or deceptive acts and Defendants intended that Plaintiff and the members of the class he represents would rely on their unfair and deceptive acts and omissions.

Defendants first argue that Plaintiff, a Missouri resident, fails to allege facts demonstrating sufficient nexus with Illinois, as is necessary to state a claim under ICFA. "[A] plaintiff may pursue a private cause of action under [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853–54 (Ill. 2005); *see Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 396–97 (7th Cir.2009). The Illinois Supreme Court acknowledged that "there is no single formula or bright-line test for determining whether a transaction occurs within this state," and that "each case must be decided on its own facts." *Avery*, 835 N.E.2d at 854. For the purposes of this analysis, I will assume *arguendo* that TU Corp., TUI, and Trans Union LLC acted together in developing, marketing, and selling the TransUnion Consumer Credit Score that Plaintiff bought, without actually deciding that contested fact.

In *Avery*, the Illinois Supreme Court held that "the plaintiff's allegation that the fraudulent scheme was disseminated from Illinois was insufficient to sustain as a complaint under the Consumer Fraud Act." *Landau v. CNA Fin. Corp.*, 381 Ill.App.3d 61, 64 (2008) (citing *Avery*, 835 N.E.2d at 854–55). The *Avery* court considered the fact that Avery resided out of state, received information regarding the defendant's policy while out of state, and attempted to benefit from the defendant's policy while out of state, and found that these factors outweighed the fact that the defendant's allegedly fraudulent policy was created in Illinois. *Avery*, 835 N.E.2d at 854. *See also Haught v. Motorola Mobility, Inc.*, No. 12-C-2515, 2012 WL 3643831,

at *4 (N.D. Ill. Aug. 23, 2012) (holding that ICFA protection should not be extended to Plaintiff's transaction with Defendant even though "the alleged misrepresentations were designed in Illinois and disseminated on a website registered and hosted in Illinois" and "the terms of an agreement relating to his use of [Defendant's services] provide[d] for the resolution of disputes under Illinois law").

Here, Plaintiff argues that the disputed transaction occurred primarily and substantially in Illinois because TU Corp. and Trans Union LLC are headquartered in Illinois. (TUI, by contrast, is a Delaware corporation based in California.) Therefore, Plaintiff alleges, the disputed practice of selling consumers VantageScore rather than FICO credit scores emanated from company headquarters in Illinois. As in *Avery*, this fact is insufficient to establish the required connection and is outweighed by Plaintiff's residence in Missouri, his search for and purchase of Defendants' product in Missouri, and his attempt to benefit from that product to acquire an auto loan in Missouri. Due to these factors, I find that the disputed transaction did not primarily and substantially occur in Illinois.

Plaintiff also highlights the Illinois choice-of-law provision contained within the transunion.com "Terms of Use" as a factor that should weigh in favor of finding that the disputed transaction occurred primarily and substantially in Illinois, citing one of my own cases for this proposition. In *The Clearing Corp. v. Fin. And Energy Exch. Ltd.*, I did consider the existence of an Illinois choice-of-law provision in a contract between an Australian company and a company headquartered in Illinois. No. 09 CV 5383, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010). However, there my determination that the disputed transaction occurred primarily and substantially in Illinois hinged on the allegations that "several of the alleged misrepresentations were made in Illinois, or by Illinois employees of [Defendant] directly to [Plaintiff's]

10

representatives" and that Plaintiff sent over a thousand emails to Defendant in Illinois, weekly conference calls involved parties located in Illinois, payments were wired to accounts in Illinois, much of the contract negotiations occurred in Illinois, and Plaintiff's executives thrice traveled to conduct business with Defendants in Illinois. *Id.*; *Id.* at n. 5; see also *Morrison v. YTB International, Inc.,* 649 F.3d 533, 537 (7th Cir. 2011) ("*Avery* holds that a choice-of-law clause is not dispositive, because a claim under the Consumer Fraud Act is independent of the contract").

Sgouros' complaint includes significantly fewer and more attenuated connections to Illinois than the complaint in *The Clearing Corp.* Because he has not met his burden of pleading a sufficient connection between the disputed transaction and the state of Illinois, Count III is dismissed as to all Defendants. Therefore, it is unnecessary to address Defendants' secondary argument that Plaintiff's allegations of an ICFA violation do not satisfy Federal Rule of Civil Procedure 9(b).

### D. Count IV

Count IV alleges that Defendants violated the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010 *et seq*. The statute provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

Plaintiff alleges that Defendants violated the statute by using deception, misrepresentation, unfair practices, concealment, suppression, and/or omission of material facts in connection with the advertising, marketing, offering, and sales of the TransUnion Consumer Credit Scores product. "The MMPA is drafted broadly and there is no specific definition of deceptive practices

11

contained in the statute." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015) (citing *Ward v. West County Motor Co.,* 403 S.W.3d 82, 84 (Mo. 2013)).

Defendants argue that Plaintiff fails to state a claim under the MMPA and has not pled facts in compliance with Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a complaint alleging fraud must state "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 746 (8th Cir.2002) (citing *Bennett v. Berg*, 685 F. 2d 1053, 1062 (8th Cir. 1982)). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Property v. Quality Inns,* 61 F.3d 639, 644 (8th Cir.1995). Missouri courts evaluating alleged violations of the MMPA require specificity in pleading. *See Blake v. Career Educ. Corp.*, 2009 WL 140742 at *3, n. 1 (E.D. MO Jan. 20, 2009); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F. 3d 552, 556 (8th Cir. 2006). For example, in *Blake v. Career Educ. Corp.* the court granted Defendant's motion to dismiss, finding that even though Plaintiff accused Defendant of seven particularized misrepresentations about its degree program (e.g. "[j]ob placement upon graduation was guaranteed," "[g]raduates of the Criminal Justice Degree Programs could reasonably expect an annual salary of $45,000 to $65,000 per year," etc.), the complaint still failed to satisfy the requirements of Rule 9(b) because it did not provide sufficient details about how Defendant communicated those misrepresentations to the Plaintiffs. *Blake*, 2009 WL 140742 at *3, n. 1.

Here, Plaintiff has identified the person making the misrepresentations as TUI, assisted by TU Corp. and Trans Union LLC. He claims that the time of the misrepresentation was June 10, 2013, when Sgouros purchased his Consumer Credit Score, and the place was on

12

Defendants' website. Plaintiff argues that the complaint alleged the contents of the materially misleading representations by claiming that Defendants provided valueless credit scores that did not align with the scores lenders use when assessing consumer creditworthiness. Plaintiff argues that such a practice is materially misleading because consumers generally believe that a credit score they might purchase would be identical to and calculated in the same way as the credit score that would be reported to potential lenders.

Defendants point out, however, that beyond merely alleging that Defendants sell the product on transunion.com, Plaintiff has alleged no facts describing or identifying how Defendants sold or advertised the product in a materially misleading fashion. Plaintiff has not alleged that Defendants ever claimed or suggested that their credit score was calculated using the same method as the FICO score. Plaintiff's complaint alleges neither misleading text from the transunion.com website nor misleading statements made by Defendants' employees. It is, in fact, less particularized than the complaint in *Blake*, where the Motion to Dismiss was granted for insufficient specificity. Because Plaintiff's complaint does not meet the level of factual specificity that is required of fraud claims under Rule 9(b), Count IV is dismissed as to all Defendants without prejudice.

Defendants additionally argue that Plaintiff's complaint has improperly "lumped" all three Defendants together, failing to separately identify what each defendant did to violate the MMPA. This issue is much the same as that discussed above in reference to Defendants' efforts to dismiss Counts I and II against TU Corp. and Trans Union LLC. I found there, as here, that Plaintiff has sufficiently alleged TU Corp. and Trans Union LLC's involvement to survive a motion to dismiss. Discovery would give both Plaintiff and Defendants the opportunity to clarify each entity's role, at which point the Defendants' specific roles in the alleged fraud should be

more clearly delineated. Should Plaintiff bring his claim under the MMPA again and plead consistently with the requirements of Rule 9(b), his lumping of Defendants as he did in the current complaint should not stand in the way of proceeding to discovery.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted with respect to Counts II, III and IV and denied with respect to Count I.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: August 18, 2016