IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY W. SGOUROS, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>TRANS UNION LLC, TRANSUNION INTERACTIVE, INC., and TRANSUNION CORP.<br><br>      Defendants. | No. 14 C 1850<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Sgouros ("Sgouros") claims that Defendants Trans Union LLC, TransUnion Interactive, Inc., and TransUnion Corp. (collectively "TransUnion") misled him and other putative class members about the accuracy and popularity of VantageScore 1.0 ("VantageScore"), a credit score developed and marketed by TransUnion. He brings a putative class action against TransUnion, asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1682 *et seq.*, and the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*

After years of motion practice and class certification discovery,[1] Sgouros moved to certify two classes under Federal Rule of Civil Procedure 23: a nationwide class

---

[1] Interested readers may review the facts and procedural history in Judge Zagel's opinion denying TransUnion's first motion to dismiss and motion to compel arbitration, *see Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507854, at *1–3 (N.D. Ill. Feb. 5, 2015); the Seventh Circuit's affirmance, *see Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1030–33 (7th Cir. 2016); and the order on TransUnion's second motion to dismiss, *see Sgouros v. TransUnion Corp*, No. 14 C 1850, 2016 WL 4398032, at *1 (N.D. Ill. Aug. 18, 2016).

comprised of every person who purchased a VantageScore from 2009 to 2015, and a Missouri subclass of Missouri residents who purchased a VantageScore from 2009 to 2015. *See* Mem. Supp. Pl.'s Mot. Class Cert. at 14 ("Pl.'s Class Cert. Mem."), ECF No. 294-1.

In support of class certification, Sgouros disclosed an expert, Kim Gerhardt. *See generally* Pl.'s Class Cert. Mem., Ex. 3, Expert Report of Kim Gerhardt ("Gerhardt Report"), ECF No. 294-3. TransUnion disclosed its own expert, Neil Librock, in response. *See generally* Pl.'s Mem. Supp. Mot. Exclude Defs.' Expert Neil Librock ("Pl.'s Mem. Exclude Librock"), Ex. 2, Expert Report of Neil Librock ("Librock Report"), ECF No. 296-2.

The parties each filed motions to exclude the testimony of the other side's experts under Federal Rule of Evidence 702. *See* Pl.'s Mem. Exclude Librock; Defs.' Mot. Exclude Test. Pl.'s Op. Witness Kim Gerhardt, ECF No. 300. The Seventh Circuit has directed district courts to decide the admissibility of expert testimony prior to ruling on class certification where testimony is important to a class certification decision. *See Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 812–13 (7th Cir. 2012). For the reasons that follow, TransUnion's motion is granted, and Sgouros's motion is granted in part and denied in part.

## II. Legal Standard

The admissibility of expert testimony is governed by Rule 702 and the Supreme Court's seminal decision in *Daubert*. *See United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

Rule 702 allows for opinion testimony by an expert—that is, someone with the requisite "knowledge, skill, experience, training, or education"—to help the trier of fact "understand the evidence or [] determine a fact in issue." Fed. R. Evid. 702. An expert witness is permitted to testify when (1) the testimony is "based on sufficient facts or data," (2) the testimony is "the product of reliable principles and methods," and (3) the witness has "reliably applied the principles and methods to the facts of the case." *Id.* The proponent of an expert witness bears the burden of demonstrating that the expert's testimony is admissible by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Under *Daubert*, the Court must act as the evidentiary gatekeeper, ensuring that Rule 702's requirements of reliability and relevance are satisfied before allowing the finder of fact to hear the testimony of a proffered expert. *See* 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). District courts have broad discretion in determining the admissibility of expert testimony. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012).

In considering whether to admit expert testimony, district courts typically employ a three-part framework that inquires whether: (1) the expert is qualified by knowledge, skill, experience, training, or education; (2) the reasoning or methodology underlying the expert's testimony is reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a factual issue. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893–94 (7th Cir. 2011). The Court now applies this framework to each challenged expert.

### III. Analysis

**A.     Kim Gerhardt**

Sgouros's expert, financial consultant Kim Gerhardt, offers two opinions. First, Gerhardt attests that most lenders did not rely on VantageScore when assessing the creditworthiness of consumers. Second, she opines that differences between VantageScore and FICO (the dominant credit scoring metric in the market) caused consumers to be confused about what their VantageScore meant and how lenders would interpret it.

TransUnion attacks Gerhardt's second opinion on two grounds. First, TransUnion challenges Gerhardt's qualifications, arguing that she lacks a background in consumer psychology. Second, TransUnion contends that she cannot offer an opinion based upon consumer surveys she had no part in conducting.

**1.     Qualifications**

In determining whether an expert is qualified, "we ask not whether an expert 'is qualified in general' but whether he is qualified to answer a 'specific question.'" *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). A court "must look at each of the conclusions [the witness] draws individually to see if he has the adequate education, skill, and training to reach them." *Gayton*, 593 F.3d at 617.

Gerhardt has over twenty years of experience in the consumer finance industry. She graduated with a B.A. in Finance from Villanova University in 1992, and earned an M.B.A. from Columbia Business School in 2000. From 1992 to 2004,

she worked for several large financial institutions as a consultant and manager, including Merrill Lynch, UBS, and Arthur Andersen. Since then, she has been a senior consultant and director at Edgar Dunn, a consulting firm serving the "payments industry." Gerhardt Report at 2.

That said, Gerhardt has no experience or training in the type of behavioral analysis required to make expert conclusions about consumer perceptions of credit scores. Nothing in her curriculum vitae ("CV") even relates to consumer behavior in the credit reporting industry. And while she points to one roundtable where she discussed credit scores, she has never consulted clients about developing, evaluating, or testing the predictiveness of credit scores. Although Gerhardt may have experience in the consumer finance industry generally, none of this experience qualifies Gerhardt to answer the "specific question[s]" at issue here—how consumers would view one credit report service versus another. *Gayton*, 593 F.3d at 617; *see, e.g.*, *Moore v. P & G-Clairol, Inc.*, 781 F. Supp. 2d 694, 704 (N.D. Ill. 2011) (chemist could not opine as to consumers' perceptions of warning label because he had no background or training in psychology or consumer behavior); *LG Elecs., U.S.A., Inc., v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 957 (N.D. Ill. 2009) (refusing to permit testimony of scientific expert as to "the most compelling lay definition" of a scientific term because he had no experience in marketing or consumer behavior); *Radiance Found. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 675 (E.D.Va. 2013) (striking portion of expert's testimony that interpreted consumer confusion surveys when expert only had experience in general market surveys);

5

*Hackett v. Procter & Gamble Co.*, No. 06cv2272, 2008 WL 4646049, at *2 (S.D. Cal. Oct. 17, 2008) (excluding proposed testimony of expert in research and development of hair dyes on consumer perception of advertising claims).

Accordingly, the Court strikes those portions of Gerhardt's report where she opines that consumers confuse VantageScore with other scoring methods.

## 2. Reliability of Survey Evidence

TransUnion also moves to exclude the survey data on which Gerhardt relies. Survey evidence is usually reliable under Rule 702 if it does not contain leading or suggestive questions. *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 625–26 (7th Cir. 2009). "A properly designed control group is also vital in a survey intended to draw inferences about consumer behavior." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 1:16 CV 9788, 2019 WL 5577165, at *2 (N.D. Ill. Oct. 29, 2019) (citing *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 580 (7th Cir. 2010)). Finally, the survey questions must not contain ambiguous terms, and ideally include a "don't know" or "unsure" option. *See DeKoven*, 599 F.3d at 581.

Gerhardt references two surveys conducted by TransUnion[2] in support of her consumer confusion claims. The first is a 2011 survey by TransUnion and the Consumer Federation of America ("CFA") that found that only forty-one percent of the sample knew that "a strong score depends on the [credit scoring] scale used." Defs.' Mem. Supp. Mot. Exclude Gerhardt ("Defs.' Mem. Exclude Gerhardt"), Ex. D,

---

[2] Pointing to this fact, Sgouros contends that the surveys are admissible as party admissions pursuant to Federal Rule of Evidence 801(d)(2). However, the party admissions doctrine, to the extent it applies, only shows that the surveys are not hearsay. *Id.* It has no bearing on the Rule 702 reliability analysis, which is a separate inquiry.

6

CFA Press Release, ECF No. 301-4. The second is a 2013 survey conducted by TransUnion that found that seventy percent of consumers had little to no knowledge of the differences between different credit scoring metrics. Defs.' Mem. Supp. Mot. Exclude Gerhardt, Ex. C, TransUnion Study, ECF No. 302-3.

When an expert relies on data they did not personally collect, their use must meet the "same standards of intellectual rigor that are demanded in their professional work." *Abbott Lab'ys v. Sandoz*, 743 F. Supp. 2d 762, 794 (N.D. Ill. 2010) (quoting *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996)). Gerhardt's use of the TransUnion surveys fails to clear this hurdle.

Gerhardt's report only cites the CFA press release and the TransUnion webpage announcing the results of the studies. She does not provide the underlying data, nor is there any evidence that she reviewed and independently analyzed the studies. What is more, Gerhardt does not describe or evaluate the methodology used in the surveys beyond repeating the perfunctory statements included in the press release and webpage.[3] An expert must do more than simply parrot the conclusions of other experts. *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *Agnew v. Cater*, No. 3:18-cv-50035, 2022 WL 313756, at *7–8 (N.D. Ill. Feb. 2, 2022) (collecting cases). And, given the sparse information Gerhardt provides, the Court has no way to evaluate the reliability of the surveys themselves. *See DeKoven*,

---

[3] *See* CFA Press Release at 2 ("The survey was administered, using questions developed by CFA and VantageScore, to a representative sample of 1000 adult Americans January 28-31 this year. The margin of error is plus or minus three percentage points."); TransUnion Survey at 2 (the methodology section states in full: "Written by TransUnion Interactive and conducted using Google Consumer Surveys, September 2013. Survey of 807 Americans. Survey results have a 95 percent confidence level.")

7

599 F.3d at 580–82. Accordingly, the Court strikes the portions of Gerhardt's expert report that reference the surveys and any of Gerhardt's opinions that rely on them.

**B.    Neil Librock**

TransUnion offers financial consultant Neil Librock to oppose class certification. Librock offers three opinions. First, he opines that FICO's market dominance in credit scoring is due to its first-mover advantage and barriers to entry and not because its score is more predictive of how lenders evaluate a consumer's creditworthiness. Second, he asserts that VantageScore is a predictive credit score. Lastly, Librock asserts that VantageScore did a better job than FICO in predicting how a lender would have evaluated Sgouros's creditworthiness, citing his Bank of America application for an auto loan in 2013.

Sgouros challenges Librock's third opinion, arguing that Librock's assessment of VantageScore's predictive performance in connection with Sgouros's auto loan is irrelevant to TransUnion's liability under FCRA and MMPA and, at best, speculative.

**1.    Relevance**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 401 is construed liberally in favor of admission. *See United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012) (relevance is a "low threshold" (quoting *Tennard v. Dretke*, 542 U.S. 274, 285 (2004))).

Sgouros argues that Librock's opinion that VantageScore accurately predicted how a lender, such as Bank of America, would have assessed Sgouros's

8

creditworthiness is irrelevant because the focus of Sgouros's claims is on whether TransUnion's marketing of VantageScore misled consumers, not whether VantageScore accurately predicted Sgouros's creditworthiness. This argument is unpersuasive.

Rule 23(a)(3) requires that Sgouros's claims must be typical of those of putative class members. Fed. R. Civ. P. 23(a)(3); *see Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (the named plaintiff's claims must arise under the "same legal theory" as the unnamed class members' claims (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998))). Here, Sgouros alleges that TransUnion violated FCRA when it marketed VantageScore to consumers because the score did not "assist[] the consumer in understanding the credit scoring assessment of the credit behavior of the consumer." 15 U.S.C. § 1681g(f)(7). If VantageScore, in fact, did accurately predict how Bank of America would assess Sgouros's credit (as Librock claims), this fact may be relevant to typicality.

As such, Librock's opinion that VantageScore accurately predicted how a lender would view Sgouros's creditworthiness will be permitted at this time.

### 2. Rule 702/*Daubert* Analysis

Sgouros also challenges Librock's opinion under Rule 702 and *Daubert*. As a preliminary matter, Sgouros does not contest Librock's qualifications to testify as to the predictiveness of VantageScore. Nor could he. Librock has over thirty years of experience in the finance industry. He holds a B.A. in Economics from Ohio State University and an M.B.A. from the University of Rochester. He currently works as a

9

consultant at Berkeley Research Group, a financial consulting firm, and as an adjunct professor of accounting and finance at California State University—East Bay. Before his consulting career, he was a senior credit officer and executive vice president at Wells Fargo from 1998 to 2012, where he worked extensively on consumer credit issues. Among his responsibilities, Librock "directed on-going testing of various credit scoring tools, including FICO, VantageScore, [and] other vendor developed scores." Librock Report ¶ 49. He also managed Wells Fargo's relationship with the three major credit reporting agencies, while also developing and implementing in-house credit scoring tools. Librock is more than qualified to offer the opinions that he does.

Qualifications aside, Sgouros contends that Librock's opinions lack the degree of reliability that *Daubert* demands. In arriving at his conclusion that VantageScore more accurately predicted a lender's assessment of Sgouros's creditworthiness than FICO, Librock reviewed Sgouros's FICO and VantageScore credit scores, the underwriting files of Bank of America, credit reports, and the terms of Sgouros's auto loan. In his report, Librock compares Sgouros's VantageScore to the auto loan terms and, after determining that the terms were "favorable" to Sgouros, concludes that the high VantageScore (*i.e.*, indicative of good credit) that Sgouros received "mean[t] Bank of America agreed with VantageScore's overall credit assessment of Mr. Sgouros." Librock Report ¶ 67.

For his part, Sgouros challenges the basis of these opinions, arguing that Librock lacks personal knowledge of Bank of America's lending criteria and

10

inappropriately speculates about Bank of America's state of mind as to Sgouros creditworthiness.

"Rule 702's reliability elements require the district judge to determine only that the expert is providing testimony that is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ the methodology." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013); *see* Fed. R. Evid. 702(c). As to the first of these determinations, Librock clears the bar. Librock bases his conclusion that VantageScore accurately predicted how a lender would assess Sgouros's creditworthiness on an evaluation of Sgouros's credit reports and Bank of America's loan file, as well as publicly available information about Bank of America's lending criteria. Furthermore, Librock informs this evaluation by his experience as a senior credit officer at Wells Fargo, where he worked with and tested VantageScore and managed consumer loan portfolios.

Because Librock arrived at his conclusions by applying his expertise in the lending and credit reporting industry to the particular facts at issue, Librock's opinion satisfies Rule 702(2). *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761–62 (7th Cir. 2010) (financial services expert's testimony was reliable where it assessed the "usual business practice" in a particular situation based on his experience in the industry); *United States v. Filer*, No. 19 CR 565, 2021 WL 2156453, at *3 (N.D. Ill. May 27, 2021) (commercial loan officer's opinion was reliable when he applied his experience in loan sales to the facts by examining the loan documents and communications at issue).

Additionally, most of Librock's opinions are reliable products of this methodology. For example, Librock concludes that Sgouros's VantageScore more accurately predicted Bank of America's assessment of Sgouros's creditworthiness than Sgouros's FICO score because VantageScore, and not FICO, deemphasized Sgouros's medical debts in calculating his score. Contrary to Sgouros's assertions, Librock did not make this up out of whole cloth—he drew on his experience at Wells Fargo, cited a Consumer Financial Protection Bureau study, and reviewed Bank of America's underwriting files. From this experience and data, he reasonably inferred that Bank of America, like his former employer, downplayed the significance of Sgouros's medical debts in its assessment of Sgouros's credit, meaning that Bank of America's assessment of Sgouros's creditworthiness aligned more closely with VantageScore than FICO. To the extent Sgouros believes this inference is unfounded, those arguments are more appropriately weighed by the trier of fact. *See Gayton*, 593 F.3d at 616 ("Determinations on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible[.]").

That said, some of Librock's conclusions wade too far into the realm of conjecture. Sgouros correctly notes that an expert witness may not smuggle in speculations about a person's "state of mind" or hypotheses about counterfactual scenarios under the cloak of expert testimony. *See, e.g.*, *Sullivan v. Alcatel-Lucent Inc.*, No. 12 C 07528, 2014 WL 3558690, at *7–8 (N.D. Ill. July 17, 2014) (St. Eve, J.) (expert had no basis to opine on state of mind of contractor when entering into agreement). Thus, Librock may testify that, in his opinion, VantageScore more

12

accurately predicted how a lender would assess Sgouros's creditworthiness than FICO, and why he believes that Bank of America's underwriting files supports this conclusion. But Librock may not testify that Bank of America "agreed" with Sgouros's VantageScore or make any similar statements. The Court also strikes any reference in Librock's report to Sgouros's having received "the best loan he could get" from Bank of America, as that also demands a level of insight into Bank of America's underwriting process that Librock does not possess.

## IV. Conclusion

For the foregoing reasons, TransUnion's motion is granted, and the Court strikes Kim Gerhardt's consumer confusion opinions. Sgouros's motion is granted in part and denied in part. Neil Librock may testify that VantageScore more accurately predicted how Bank of America viewed Sgouros's creditworthiness than FICO, and that this was due to VantageScore's relative deemphasis on medical debt compared to FICO. But he may not testify that Bank of America "agreed with" VantageScore, or that Sgouros received "the best loan he could get" from Bank of America.

**IT IS SO ORDERED.**          **ENTERED: 3/21/22**

_[signature]_

**John Z. Lee**
**United States District Judge**