UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY W. SGOUROS, individually and )
on behalf of others similarly situated )
)
Plaintiffs, )
)
v. ) Case No. 1:14-cv-01850
)
) Judge Sharon Johnson Coleman
TRANSUNION CORP.; TRANS UNION )
LLC; and TRANSUNION INTERACTIVE, )
INC., )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary W. Sgouros claims that Defendants Trans Union LLC, TransUnion

Interactive, Inc., and TransUnion Corp. (collectively "TransUnion") misled him and other putative

class members about the accuracy and popularity of VantageScore 1.0 ("VantageScore"), a credit

score developed and marketed by TransUnion. He brings a putative class action against

TransUnion, asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1682 *et*

*seq.*, and the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*

Sgouros now moves this Court for an order certifying this case to proceed as a class action pursuant

to Federal Rule of Civil Procedure 23. For the following reasons, Sgouros' motion for class

certification is denied [327].

**Background**

A. Complaint Allegations

Sgouros, a Missouri resident, alleges that on June 10, 2013, he purchased a 3–in–1 Credit

Report, Credit Score & Debt Analysis, on Defendant TransUnion Interactive's website. This

purchase the VantageScore. Sgouros alleged that the same day he made this purchase, he learned

from a car dealership lender that the credit score the lender was provided was more than 100 points

1

lower than the number contained in the VantageScore Sgouros purchased. The car dealership

lender refused to extend Sgouros his desired auto loan based on the lower score.

Sgouros alleges that his credit scores mismatched because TransUnion uses the inferior

credit score VantageScore, which is different from the "FICO" calculation used by the majority of

American lenders. He alleges he obtained his FICO score from his bank. Sgouros alleges that

TransUnion takes advantage of widespread consumer ignorance of the divergent scoring systems,

selling consumers credit score products that do not meet their needs. Sgouros claims that he would

not have purchased the VantageScore had he known it was different from the FICO score used by

the car dealer.

B. Class Definitions

Sgouros filed suit alleging a violation of the FCRA and a violation of the MMPA. After

years of motion practice and class certification discovery, Sgouros seeks certification of the

following classes under Federal Rule of Civil Procedure 23(a) and (b)(3):

The Nationwide Class. All persons in the United States who purchased a VantageScore 1.0
Score through TransUnion Interactive's website, or its predecessor website, during the period
October 1, 2009, to September 1, 2015.

The Missouri Subclass. All persons in the state of Missouri who purchased a VantageScore
1.0 Score through TransUnion Interactive 's website, or its predecessor website, during the period
October 1, 2009, to September 1, 2015.

C. Deposition Testimony

TransUnion deposed Sgouros as part of class certification discovery. During his deposition,

Sgouros testified that he first realized that his VantageScore was "useless" in September 2012, after

he had applied for a home mortgage and learned that VantageScore and FICO scores were different.

He also testified that on June 10, 2013, he did not buy the score in advance of his search for an auto

loan. Rather, he made the purchase after he received the auto loan at almost 10:00 PM that at night.

Sgouros further testified that he did not read any of the explanatory materials that accompanied his

scores.  When asked why, he testified that he just wanted to know the score and was not intested in

the analysis.  Finally, Sgouros testified that he did not read the TransUnion website content that

accompanied the purchase of his VantageScore.

**Legal Standard**

To be entitled to class certification, Plaintiffs must satisfy all of the requirements of Federal

Rule of Civil Procedure 23(a) and one of the three alternatives set forth in Rule 23(b).  *Messner v.*

*Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012).  Rule 23(a) requires that a proposed

class meet requirements of numerosity, typicality, commonality, and adequacy of representation.  *Id.*

When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also

show that questions of law or fact common to the members of the proposed class predominate over

questions affecting only individual class members and, relatedly, that a class action is superior to

other available methods of resolving the controversy.  *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059

(7th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)).

Rule 23 "does not set forth a mere pleading standard."  *Comcast Corp. v. Behrend*, 569 U.S. 27,

33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) (internal quotation marks and citation omitted).  When

factual disputes bear on matters vital to certification, the Court must receive evidence and resolve

those disputes prior to certifying the class. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

Certification is proper only if, "after rigorous analysis," the Court is satisfied that Rule 23's

prerequisites have been met. *Comcast Corp.*, 569 U.S. at 33.  "Plaintiffs bear the burden of showing

that a proposed class satisfies the Rule 23 requirements but they need not make that showing to a

degree of absolute certainty.  It is sufficient if each disputed requirement has been proven by a

preponderance of evidence." *Messner*, 669 F.3d at 811 (citations omitted).  The Seventh Circuit has

repeatedly reiterated that the focus of class certification must be on Rule 23 and that class

certification proceedings cannot be allowed to turn into a preemptive determination of the merits.
*See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015).

**Statutory Background**

Fair Credit Reporting Act

For the Nationwide Class, Sgouros seeks class-wide adjudication of his claim that
TransUnion violated 15 U.S.C. § 1681g(f)(7)(A), which requires a consumer reporting agency, when
it provides a credit score to a consumer, to supply the consumer with a credit score (1) that is
derived from a credit scoring model that is widely distributed to users by that consumer reporting
agency in connection with residential real property loans; or (2) that assists the consumer in
understanding the credit scoring assessment of the credit behavior of the consumer and predictions
about the future credit behavior of the consumer. 15 U.S.C. § 1681g(f)(7)(A).

The Parties agree that the VantageScore was not "widely distributed . . . in connection with
residential real property loans." Thus, the core dispute surrounds whether VantageScore 1.0 "assists
the consumer in understanding the credit scoring assessment of the credit behavior of the consumer
and predications about the future credit behavior of the consumer." *Id.*

Missouri Merchandising Practices Act

The MMPA made unlawful "[t]he act, use or employment by any person of any deception,
fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment,
suppression, or omission of any material fact in connection with the sale or advertisement of any
merchandise." Mo. Ann. Stat. § 407.020. The MMPA permits a cause of action to "[a]ny person
who purchases or leases merchandise primarily for personal, family or household purposes and
thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or
employment by another person of a method, act or practice declared unlawful by § 407.020." Mo.
Ann. Stat. § 407.025.

**Discussion**

TransUnion does not contest that Sgouros meets the requirements of numerosity of Rule 23(a) and superiority of Rule 23(b)(3). The parties largely dispute whether Sgouros has satisfied the Rule 23(a) requirements of commonality and adequacy of representation, as well as the Rule 23(b) requirement of predominance. The Court addresses each in turn.

Rule 23(a) – Commonality

To demonstrate commonality under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "It's true that '[e]ven a single [common] question' will do." *Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Dukes,* 131 S.Ct. at 2556). "But the Supreme Court explained in [*Dukes* ] that superficial common questions—like whether each class member is [a public school student] or whether each class member 'suffered a violation of the same provision of law'—are not enough." *Id.* (quoting *Dukes,* 131 S.Ct. at 2551). Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' " *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 (1982)). The class "claims must depend upon a common contention," and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, Sgouros proposes five questions to establish commonality: (1) whether the VantageScore "assist[ed] the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer;" (2) whether the sale of VantageScore scores to consumers was governed by the FCRA; and (3) whether Defendants negligently and/or willfully violated the FCRA; (4) whether Defendants violated the

MMPA; and (5) the question of damages. As Sgouros acknowledges, the first question of whether VantageScore assisted consumers in understanding their credit scoring assessment and predicting the future of their credit behavior is the core liability question in this matter.

Sgouros claims that there are several pieces of common evidence that consumers were not assisted by VantageScore, including the differences in the score ranges used for VantageScore compared to the general FICO score range; the fact that the vast majority of lenders did not use VantageScore; and the studies conducted by TransUnion, the testimony of Ms. Gerhardt, and the findings of the Consumer Financial Protection Buereau – all of which are intended to show that class members were confused by VantageScore because it was not a FICO score. Because of this evidence, Plaintiff believes that this common proof shows that VantageScore did not assist consumers as required by statute.

The Court disagrees. The purpose of common questions is to determine whether the class has suffered the same injury. *Wal-Mart Stores,* 131 S.Ct. at 2551; *see Swan ex rel. I.O. v. Bd. of Educ. of City of Chicago*, No. 13 C 3623, 2013 WL 4047734, at *5 (N.D. Ill. Aug. 9, 2013) (Lee., J.) (denying class certification because questions failed to show the class's alleged common injury). Here, Sgouros's questions merely restates the core elements of statutory violations. Historically, these types of questions have been insufficient for class certification. *See Wal-Mart Stores*, 131 S.Ct. at 2551 (citing "Is that an unlawful employment practice?" and "What remedies should we get?" as examples of insufficient questions). The Court finds that the questions are insufficient as they do not demonstrate to what extent the class members suffered a common injury.

Further, Sgouros' core liability question does not speak to whether the class suffered the same injury. Sgouros argues that the VantageScore cannot assist consumers in understanding their credit score assessment and make predictions about their future behavior as consumers because the VantageScore was not similar enough to a FICO score and or widely used by lenders. Even

6

assuming this is true, it does not follow that being dissimilar to a FICO score or not being used by lenders renders a score incapable of assisting consumers in understanding their credit scoring assessment. In theory, knowing one's credit score can be useful to consumers in understanding their credit scoring assessment and future credit behavior, although not relied on by lenders or others in the borrowing industry. Sgouros has presented no case law requiring a comparison to FICO scores when determining if a credit score assist consumers as required by § 1681g(f)(7)(A). Sgouros has offered no argument or evidence independent of a comparison to a FICO score that the VantageScore model alone failed to assist consumers as required by statute. In the absence of any additional argument, the Court is not convinced that Sgouros' FCRA common questions are capable of common answers showing VantageScore's failure to assist consumers as required by statute. *See Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 434 (7th Cir. 2015) (citing *Wal-Mart Stores,* 131 S.Ct. at 2551 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."))

Because Sgoruos' MMPA common question of "whether Defendants violated the MMPA" is premised on the same logic as the FCRA claim, the argument for commonality fails as well.

Thus, the Court finds that commonality is not met for either the FCRA or the MMPA claims.

Rule 23(a) - Adequacy of Representation

Furthermore, the Court finds serious concerns with the adequacy of Sgouros' representation as named plaintiff. The Rule 23(a)(4) adequacy inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent*

7

*Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011). At issue here is the adequacy of Sgouros as named

plaintiff in the lawsuit. A named plaintiff is inadequate if their interests are "antagonistic or

conflicting" with those of the absent class members, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.

1992), or if they are subject to a defense not applicable to the class as a whole. *See CE Design Ltd. v.

King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). "A named plaintiff who has serious

credibility problems ... [also] may not be an adequate class representative." *Id.*

TransUnion's challenge to the adequacy of Sgouros as class representatives due to

inconsistencies in his deposition testimony. "For an assault on the class representative's credibility

to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so

severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's

credibility, to the detriment of the absent class members' claims." *Id.* at 728.

Having reviewed Sgourous' deposition testimony, the Court finds that there is significant

admissible evidence from Sgouros' deposition testimony that challenges credibility such that

prevents him from serving as an adequate representative.

As to the FCRA claim, Sgouros' testimony contains several inconsistencies. First, Plaintiff

testified that he realized that his VantageScore was "useless" in September 2012, after he applied for

a home mortgage and learned that VantageScore and FICO scores were different, and that

TransUnion was not providing him with a FICO score. This realization occurred months before he

purchased the June 2013 score that forms the basis of this lawsuit claims. When confronted with

the inconsistency, he responded "Why did I continue to buy it? What does it have to do with

anything?" Plaintiff declined to explain why he purchased a product after determining that it was, in

fact, not a FICO score. Second, despite initially claiming that he was advised by his auto lender that

the FICO score the lender received "was more than 100 points lower" than his VantageScore,

Sgouros- admitted under oath that he did not buy the score in advance of his search for an auto

loan.  Instead, he made the purchase after he received the auto loan at almost 10:00 PM at night.

Finally, Sgouros claims that he only looked at the VantageScore and did not read any of the

explanatory material that came with the score, which calls into question to what extent could he be

mislead if he disregarded the explanations of the scores.  A reasonable jury could find

inconsistencies in Sgouros' testimony and question is credibility to the point where it compromises

the class.

As to the MMPA claim, Sgouros alleged that the advertising on www.transunion.com misled

him into believing that the VantageScore he was purchasing was the same score that lenders use.

However, Sgouros testified in his deposition that he never read any website content as he was only

interested in the score.  Thus, there is reason to believe Sgoruos could not have been misled by a

website he did not read.

A reasonable fact finder could review the deposition testimony and focus on Sgouros'

credibility to the detriment of the class.  Thus, the Court finds that adequacy of representative has

not been satisfied.

Rule 23(b)(3) - Predominance

A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class

members predominate over any questions affecting only individual members, and ... a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3).  Factors pertinent to predominance and superiority include: "(A) the class

members' interests in individually controlling the prosecution or defense of separate actions; (B) the

extent and nature of any litigation concerning the controversy already begun by or against class

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (D) the likely difficulties in managing a class action." *Id.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is "far more demanding." *Id.* at 624. Predominance is not satisfied where liability determinations are individual and fact-intensive. *See Kartman v. State Farm Mut. Auto. Ins. Co.,* 634 F.3d 883, 891 (7th Cir. 2011).

Sgouros argues that there are no individualized issues because all class members bought VantageScore. The key aspects of VantageScore that give rise to liability under § 1681g(f)(7)(A) and the MMPA, including use of the same credit scoring algorithm, the same credit scoring range, and fact that for all class members the same numeric value of a score would reflect entirely different probabilities of default and associated risk for each VantageScore and FICO score, do not change from consumer to consumer even though each score is tied to an individual credit history. TransUnion argues that Sgouros' claim necessarily requires the sort of individual, case-by-case consideration of each consumer's beliefs and understanding that courts regularly acknowledge is inappropriate for classwide treatment.

Here, Sgouros' claim fails for similar reasons to commonality. While it is true that consumer paid the same price and used the same scoring algorithm for the same products, liability under § 1681g(f)(7)(A) depends on whether the credit score at issue assisted the consumer as require by statute. The statutory requirement of a credit score to assist a consumer in understanding the "credit scoring assessment" of their "credit behavior" and make predictions about their "future credit behavior" seems necessarily individualized given the inherently personal nature how credit scores are calculated and consumers personal behaviors. *See Clark v. Experian Info. Sols., Inc.,* 256 F. App'x 818, 823 (7th Cir. 2007) (district court did not abuse discretion finding class issues did not predominate where individualized proof was required to prove cause of action)*; Mejdrech v. Met–Coil*

10

*Sys. Corp.,* 319 F.3d 910, 911 (7th Cir. 2003) (only genuinely common issues, identical across all claimants, are suitable for class resolution). Given the apparent fact-intensive and individual nature of the statutory requirement for liability, the Court finds that predominance is not met.

**Conclusion**

For these reasons, this Court denies Plaintiff's motion for class certification.

**IT IS SO ORDERED.**

Date: 10/12/2023

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

11